**ANCOM, INC., a corporation, Appellant,**

v.

**E. R. SQUIBB & SONS, INC., a corporation, Appellee.**

No. 80–2093.

United States Court of Appeals, Eighth Circuit.

Submitted July 21, 1981.

Decided Sept. 15, 1981.

Don W. Taute (argued), Rosenberg & Yungblut, Ronald Rosenberg, Lincoln, Neb., for appellant.

Gary Dolan, Knudsen, Berkheimer, Beam, Richardson & Endacott, Lincoln, Neb., for appellee.

Before LAY, Chief Judge, and STEPHENSON and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

This appeal is from a judgment notwithstanding the verdict entered on a jury verdict for $87,500 in a breach of contract suit brought by Ancom, Inc. against E. R. Squibb & Sons, Inc. The district court, the Honorable Warren E. Urbom, presiding, set aside the verdict and granted Squibb a judgment notwithstanding the verdict on the ground that under Nebraska law the contract was unenforceable because of the Statute of Frauds. Ancom brought this appeal. We affirm.

Ancom, Inc., is a Nebraska corporation that produces and sells audio visual programs. E. R. Squibb & Sons, Inc., is a New Jersey corporation whose animal health division sells animal medicine to veterinarians. On the 19th of September, 1978, representatives of the two corporations met in Princeton, New Jersey. At that meeting Squibb's representative agreed to purchase Ancom's audio visual client education system on an exclusive basis for the year 1979. The joint program was to promote the products of both corporations. Squibb's director of marketing wrote a letter to Ancom dated September 21, 1978, that summarized the discussion. Other meetings between the parties were held in subsequent months, including one held February 1, 1979. At that meeting both the success of the program and the method of payment were discussed. At this point the success of the program was beyond the original expectations of the parties. Squibb agreed to make four quarterly payments to Ancom. Short-

ly after this meeting Ancom sent four invoices to Squibb. Each invoice was in the amount of $43,750.00 and represented the first three quarters of 1979 while leaving the fourth quarter open-ended. Squibb paid $87,500.00 to Ancom for the first two quarters and $13,300.00 to reimburse Ancom for equipment. The next payment was due July 1, 1979. Prior to July 1, 1979, however, a dispute over payment arose. Ancom did not receive payment on July 1, 1979, nor at any later time. Despite the nonpayment, Squibb continued to request performance and Ancom complied through 1979. Ancom brought suit for breach of contract and the jury returned a verdict in favor of Ancom in the sum of $87,500.00.

There exists sufficient evidence to sustain the jury's finding that Ancom and Squibb entered into an oral contract on September 19, 1978.[1] In granting defendant's motion for judgment notwithstanding the verdict the trial court assumed that there was a contract, but found that the contract was unenforceable because of the Nebraska Statute of Frauds, Neb.Rev.Stat. § 36–202 (Reissue 1978). We agree with this finding.

*The Nebraska Statute of Frauds.*

Section 36–202 of the Nebraska Revised Statutes (Reissue 1978), provides:

> In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: (1) Every agreement that, by its terms, is not to be performed within one year from the making thereof;
>
> . . .

The oral contract between Ancom and Squibb required the parties to begin performance on or before September 19, 1978, and to continue throughout the year 1979. Ordinarily, this contract is unenforceable. *Restatement of Contracts* § 198 (1932).

Under Nebraska law, however, the contract may still be enforced if there is a written memorandum of the agreement

---

1. Squibb in its answer denied the existence of a contract. However, in a counterclaim it asserted that Ancom had breached the "agreement."

*sufficient* to take the contract out of the Statute of Frauds. *David v. Tucker*, 196 Neb. 575, 244 N.W.2d 197 (1976).

In *David v. Tucker*, the Nebraska Supreme Court applied the following test:

> The statute of frauds provides that a contract for the sale of any land shall be void unless the contract or a memorandum thereof be in writing and signed by the party by whom the sale is to be made. § 36–105, R.R.S. 1943. The memorandum is not the contract but only written evidence of an oral contract. *Ord v. Benson*, 163 Neb. 367, 79 N.W.2d 713. The memorandum must contain the essential terms of the contract. *Heine v. Fleischer*, 184 Neb. 379, 167 N.W.2d 572; *Kubicek v. Kubicek*, 186 Neb. 802, 186 N.W.2d 923. Generally, the memorandum should contain the names of the parties, a description of the land, the price, the general terms of the agreement, and the signature of the vendor. *Campbell v. Kewanee Finance Co.*, 133 Neb. 887, 277 N.W. 593. Ordinarily, time for performance is not an essential term of the contract, but it must be included in the memorandum to be enforceable. *Heine v. Fleischer*, *supra*.

*David v. Tucker*, 196 Neb. at 578, 244 N.W.2d at 200.

2. The Nebraska Supreme Court has often considered the question of the sufficiency of the memorandum. In its early cases, the court held that essential terms of an oral contract may be proved by parol evidence. *Ruzicka v. Hotovy*, 72 Neb. 589, 101 N.W. 328 (1904). However, *Ruzicka* has been overruled to the extent that it inferred that all material terms of the contract need not appear in the memorandum. *Heine v. Fleischer*, 184 Neb. 379, 167 N.W.2d 572 (1969); *Kubicek v. Kubicek*, 186 Neb. 802, 808, 186 N.W.2d 923, 927 (1971).

Prior to the *Tucker* decision, the Nebraska Supreme Court often cited *Restatement of Contracts* § 207 (1932) as the test for the sufficiency of the memorandum. *See Ord v. Benson*, 163 Neb. at 369, 79 N.W.2d at 715; *Heine v. Fleischer*, 184 Neb. at 380, 167 N.W.2d at 573. Section 207 reads as follows:

> A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,

■ Although the memorandum must contain the "essential terms" of the oral contract, the Nebraska Supreme Court does not require that the memorandum contain the "terms and conditions of *all* the promises constituting the contract." [2] Instead, the court will inquire whether a promise not contained in the memorandum is an integral part of the oral contract. *Ord v. Benson*, 163 Neb. 367, 79 N.W.2d 713. If it is an integral part then the promise should be set out in the written memorandum. If not, then the court may refuse to enforce that particular term without affecting the legal efficacy of the agreement. *David v. Tucker*, 196 Neb. 575, 244 N.W.2d 197 (1976).

■ Plaintiff relies on the September 21, 1978, letter written by Mark Metrokotsas, then Squibb's marketing director, to remove the oral contract from the Statute of Frauds. The district court found that the letter was an insufficient memorandum because:

> None of the writings by Squibb's personnel contained the following promises which witnesses called by Ancom at the trial testified were part of the contract:
>
> 1. That Squibb was to furnish its customer list to Ancom;
>
> > (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and
> >
> > (b) the land, goods or other subject-matter to which the contract relates, and
> >
> > (c) the terms and conditions of all the promises constituting the contract and by whom and to whom promises are made.

However, it is clear from the decision in *Ord v. Benson* that the court does not apply the literal language of § 207. In *Ord*, the court held that a memorandum for the sale of a tractor which omitted the dates of settlement and delivery and the designation of deliverer was sufficient under *Restatement of Contracts* § 207. The court found that these terms were not an integral part of the contract. *Ord*, 163 Neb. at 370, 79 N.W.2d at 715. *See also Reifenrath v. Hansen*, 190 Neb. 58, 206 N.W.2d 42 (1973); *Kubicek v. Kubicek*, 186 Neb. 802, 186 N.W.2d 923 (1971); *Heine v. Fleischer*, 184 Neb. 379, 167 N.W.2d 572 (1969).

2. That Squibb was not to enter into any similar contract with any other person or company;

3. That $175,000 was to be paid by Squibb to Ancom irrespective of the number of units placed;

4. That Squibb would furnish 1372 bona fide leads;

5. That Squibb sales people were to do no selling of Ancom products;

6. That Squibb sales personnel would do nothing which would cause veterinarians to decide what the veterinarians wanted by way of premiums before Ancom representatives called upon them.

The omission of these promises from the written memorandum does not necessarily prevent enforcement of the oral contract. We disagree with the broad sweep of the trial court since, in our opinion, several of these promises are not essential terms of the contract. For example, Squibb's promise not to enter into any similar contract with any other person or company is not an integral term; Ancom had no competitors. Also, the letter states that $175,000 was earmarked for the joint promotion of client educational programs produced by Ancom. "Earmarked" is a latently ambiguous term and parol evidence may be introduced to explain its meaning. See David v. Tucker, 196 Neb. at 579, 244 N.W.2d at 199.

However, the letter does not contain any reference to Ancom's promise not to enter into a similar agreement with any of Squibb's competitors. If this exclusivity feature is an integral part of the oral agreement as the district court found, then the Statute of Frauds will prevent enforcement.

Ancom contends that Squibb agreed to pay Ancom $175,000 not for projectors and tapes, but for an unique audio visual client education concept. A major factor of the oral agreement was Ancom's promise that Ancom would not have similar tie-ins with any of Squibb's competitors, although Ancom could still sell on their own. We find the parties intended this exclusivity to be a significant part of the agreement since the record shows Ancom had been negotiating with Beacham, one of Squibb's competitors. Roland Andersen, Ancom's president, testified:

Q. Let us suppose, sir, that during the year 1979 you were able to provide $175,000 worth of tapes and projectors and Squibb paid you $175,000. Under that set of circumstances, how much is Squibb paying you for the exclusivity feature of the contract or agreement?

A. $175,000.

Q. And the tapes and projectors are free?

A. We did not sell projectors and programs to Squibb. We sold them an audio visual, unique audio visual client education concept.

Andersen stated at trial that the exclusivity feature was one of the original parts of the agreement. He also testified that the exclusivity feature was agreed upon before the September 19, 1978, meeting, but that there is nothing in writing on that feature. Several other witnesses called by Ancom testified that the exclusivity feature was an essential part of the agreement.[3] Also, both Exhibit 1, the letter from Ancom's vice-president of marketing to Squibb's vice-president of sales dated July 24, 1978, and Exhibit 2, the August 31, 1978, letter to and from the same parties, mention the exclusivity of the arrangement. At oral argument Ancom's counsel asserted that the exclusivity feature was omitted from the September 21, 1978, letter because Squibb wanted that information to remain confidential. That explanation is not persuasive, however, since the two previous

3. Robert McCain, former vice-president of marketing for Ancom, testified that at the September 19, 1978, meeting the parties discussed what it would cost for the *exclusive right* for these documents. Mark Metrokotsas, former director of marketing for Squibb's animal health division, testified that there was never any question that it would be anything other than exclusive. Vincent Trovati, former director of advertising for Squibb, attended the September 19, 1978, meeting. He testified that the exclusivity acquired in the deal was part of the consideration.

letters between the parties mentioned the exclusivity feature.

Ancom's promise to work exclusively with Squibb in this promotion was an essential element of the oral contract. Since the exclusivity feature is not contained in the September 21, 1978, letter the Statute of Frauds prevents the enforcement of the oral agreement.[4]

*Performance.*

 Ancom argues that the contract has been removed from the Statute of Frauds because it has been performed by one party. Judge Urbom noted in his memorandum on the motion for judgment notwithstanding the verdict the contradictory Nebraska case law on this point. One line of cases holds that oral agreements wholly performed on one side *within a year* after they are made are not void under the Statute of Frauds. *See Maseberg v. Mercer,* 176 Neb. 668, 127 N.W.2d 208 (1964); *In re Estate of Black,* 125 Neb. 75, 249 N.W. 84 (1933); *Platte County Independent Tel. Co. v. Leigh Independent Tel. Co.,* 80 Neb. 46, 116 N.W. 511 (1908); *Kendall v. Garneau,* 55 Neb. 403, 75 N.W. 852 (1898). On the other hand, the court in other cases has stated the same rule except that it did not require explicitly that full performance be rendered within a year. *See Albracht v. Prudential Ins. Co.,* 201 Neb. 249, 267 N.W.2d 511 (1978); *Montgomery v. Quantum Labs, Inc.,* 198 Neb. 160, 251 N.W.2d 892 (1977); *Ridenour v. Kuker,* 185 Neb. 321, 175 N.W.2d 287 (1970). After examining these cases Judge Urbom concluded "that where the remedy sought is not one in equity and where the oral contract sought to be enforced is one for personal services, at least, a contract that cannot be performed within one year is not removed from the Statute of Frauds by performance, unless that performance constitutes 'full performance by one party and that performance is completed within one year of the making of the contract.' " Judge Urbom found that Ancom had not fully performed within a year of the making of the contract.

 Although we are not inextricably bound by the trial court's ruling, we nonetheless give deference to his findings on state laws where there is not strong argument that such choice of law is fundamentally deficient in analysis or otherwise lacking in reasoned authority. *See Luke v. American Family Mut. Ins. Co.,* 476 F.2d 1015, 1019 (8th Cir. 1973), *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973).

The judgment is affirmed.

---

4. The evidence shows that a major part of Ancom's performance was entering into the exclusive agreement; Squibb was to pay Ancom $175,000 for the exclusivity feature. Ancom did not enter into any similar arrangements with any of Squibb's competitors.