R.W. MURRAY CO., a corporation, and The Citadel, Ltd., a limited partnership, by its general partners, Robert E. Kresko, Harlan R. Crow and George A. Shutt, Appellants,

v.

SHATTERPROOF GLASS CORPORATION, a corporation and Anaconda Aluminum Company, a corporation, Appellees.

No. 82–1078.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1982.

Decided Jan. 11, 1983.

Popkin, Stern, Heifetz, Lurie, Sheehan, Reby & Chervitz, Ronald U. Lurie, Richard J. Sheehan, St. Louis, Mo., for The Citadel, Ltd.

Thompson & Mitchell, W. Stanley Walch, Michael D. O'Keefe, Dan H. Ball, St. Louis, Mo., for R.W. Murray Co.

Robert S. Allen, Steven A. Muchnick, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Shatterproof Glass Corp.

Guilfoil Symington, Petzall & Shoemake, Jim J. Shoemake, Francis G. Slay, J. Bennett Clark, St. Louis, Mo., for co-appellee Anaconda Aluminum Co.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and STEVENS,* District Judge.

ROSS, Circuit Judge.

On July 15, 1981, appellants, R.W. Murray Co. and The Citadel, Ltd., filed suit against the appellees, Shatterproof Glass Corporation and Anaconda Aluminum Company alleging breaches of express and implied warranties, negligence, and misrepresentation in connection with a sale of goods by the appellees. Jurisdiction was based on 28 U.S.C. § 1332 (1976) (diversity of citizenship). Based upon appellees' Fed.R.Civ.P. 12(b)(6) motions to dismiss for failure to state a cause of action, the district court,[1] 529 F.Supp. 297, dismissed the instant action on December 21, 1981. After carefully considering the record and arguments on appeal, we reverse in part and remand to the district court for further proceedings consistent with this opinion.

## I. *Background*

Appellant The Citadel owns an office building in St. Louis, Missouri, which was constructed between 1974 and 1976 pursuant to a contract with appellant R.W. Murray, the general contractor. In July 1974 Murray entered into a subcontract with Boain Glass Company under which Boain agreed to furnish all labor, materials and equipment required for the curtainwall, glass, and glazing to be used in the construction of the building. Subsequently, Boain, which is now an inactive Illinois corporation, contracted with appellees Shatterproof and Anaconda. Under these contracts Shatterproof agreed to supply the spandrel and vision panels for the building. Anaconda agreed to supply the aluminum framing to be used in the curtainwall system in the building. Materials supplied by appellees pursuant to these contracts were delivered to the construction site and installed between 1974 and 1976.

The Citadel and Murray complaint alleges that the Shatterproof vision and spandrel panels and the Anaconda Aluminum fram-

---

* The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri.

ing are defective in several respects, resulting in breakage and accumulation of dust and moisture obscuring vision. Furthermore, the complaint alleges that Shatterproof has discontinued the manufacture of the particular mirror color tint used in the glass curtainwall panels originally supplied, and that Shatterproof has refused Murray's demands to manufacture replacement panels of the same color tint, thereby making it impossible for Murray and The Citadel to replace the defective panels with matching panels. Although Murray and The Citadel were not direct parties to the Boain contracts with Shatterproof and Anaconda, they allege that they are third party beneficiaries to these contracts. In addition, Murray and The Citadel allege that Shatterproof expressly warranted to them, in its general literature distributed to the public, that the vision and spandrel panels it supplied would be free from certain defects for a period of twenty years. As a result of the alleged negligence, misrepresentations, and breaches of the contracts and warranties in question, appellants are seeking in excess of $3,000,000 in damages.

Before addressing the issues presented on appeal it is appropriate to reiterate the well established general legal standards governing motions to dismiss under Fed.R.Civ.P. 12(b)(6). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). In appraising the sufficiency of the complaint, the court must view the complaint in the light most favorable to the plaintiff, and should not dismiss the complaint "merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir. 1982). "Thus, as a practical matter, a dis-

missal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir.1978) (citations omitted), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979). One such "insuperable bar to relief" justifying dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), occurs in cases in which it "appears from the face of the complaint itself that the limitation period has run." *Guy v. Swift & Co.,* 612 F.2d 383, 385 (8th Cir.1980).

■ Finally, it should be noted that in diversity cases such as the instant case in which state law governs the issues the district court's interpretation of that local law is entitled to great weight. *Hunter v. United States,* 624 F.2d 833, 837 (8th Cir.1980); *Bazzano v. Rockwell International Corp.,* 579 F.2d 465, 469 (8th Cir.1978). "Nevertheless, we are not bound by a district court's interpretation of state law and must reverse if we find that the district court has not correctly applied local law," *id.* (citations omitted), or if such interpretation of state law "is fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir.1981).

## II. *Express Warranty Claims*

### a. *Shatterproof*

Appellants brought two counts premised upon express warranties against appellee Shatterproof. In count I appellants alleged that they were the third party beneficiaries of an express warranty made by Shatterproof to Boain to the effect that the spandrel and vision panels would be free for a period of ten years from defects in material or workmanship and that Shatterproof would replace all defective panels.[2] In

---

2. The exact language of this alleged warranty contained in the architectural specifications of the Murray subcontract with Boain and incorporated by reference into the complaint was as follows:

Vision and spandrel glass shall be guaranteed by the glass manufacturer to the owner for a period of ten (10) years from date of acceptance of the project to furnish and replace any unit which develops material obstruction of

count III appellants alleged that, through its general product literature distributed to the public, Shatterproof expressly warranted to appellants that for a period of twenty years vision and spandrel panels supplied by Shatterproof would be free from defects in material or workmanship which result in moisture accumulation, film formation or dust collection between the interior surfaces. Shatterproof limited its liability under this warranty to replacement of defective panels.[3]

Under Missouri law an action for breach of contract for the sale of goods "must be commenced within four years after the cause of action has accrued." Mo.Ann.Stat. § 400.2–725(1) (Vernon 1965).

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* at 400.2–725(2) (emphasis added).

The district court concluded that the alleged Shatterproof express warranties in the instant case did not constitute warranties extending to "future performance of the goods," but were only replacement commitments by Shatterproof. Therefore, because it determined that the cause of action on these express warranty claims accrued at the time the goods were delivered by Shatterproof between 1974 and 1976, and the appellants' complaint was not filed until 1981, the court held that any express warranty causes of action against Shatterproof were barred by the four year statute of limitations. *R.W. Murray Co. v. Shatterproof Glass Corp.,* 529 F.Supp. 297, 299 (E.D.Mo.1981). We do not agree.

No Missouri state court cases have been found which delineate the standards to be applied in determining whether a warranty explicitly extends to future performance.[4] However, in *Binkley Co. v. Teledyne Mid-American Corp.,* 333 F.Supp. 1183 (E.D.Mo. 1971), *aff'd,* 460 F.2d 276 (8th Cir.1972) (applying Missouri law), the federal district court addressed the question of whether a warranty providing that a welder would "be capable of welding at 1000' per fifty minute hour, or a gross rate of 1200' per hour" was a warranty which explicitly extends to future performance under Mo.Ann. Stat. § 400.2–725(2). 333 F.Supp. at 1186. The court noted the general "judicial reluctance to infer from the language of express warranties terms of prospective operation that are not clearly stated," and indicated that the term "explicit" meant that the warranty of future performance must be unambiguous, clearly stated, or distinctly set forth. Because the warranty language in *Binkley* did not make reference to future time, the court concluded that the warranty did not "constitute an 'explicit' warranty of future performance." *Id.* at 1186–87.

---

vision between the interglass surfaces. This guarantee is for material and labor costs for replacing.

**3.** The exact language of this alleged warranty contained in a Shatterproof Technical Bulletin, incorporated by reference into the complaint, was as follows:

> Subject to the conditions below, Shatterproof Glass Corporation warrants its insulating glass units for a period of twenty (20) years from the date of manufacture against defects in material or workmanship that result in moisture accumulation, film formation or dust collection between the interior surfaces, resulting from failure of the hermetic seal.

Purchaser's exclusive remedy and Shatterproof's "total" liability under this warranty shall be limited to the replacement of any lite failing to meet the terms of this warranty. Such replacement will be made F.O.B. Detroit to the shipping point nearest the installation.

**4.** The court in *Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc.,* 625 S.W.2d 906 (Mo.App.1981) did make the cursory statement that a one year "sole warranty" for defects in parts and workmanship did not explicitly extend to future performance. *Id.* at 909 (citing *Binkley Co. v. Teledyne Mid-American Corp.,* 333 F.Supp. 1183 (E.D.Mo.1971), *aff'd,* 460 F.2d 276 (8th Cir.1972)).

■ The basic principle underlying *Binkley* is that in order to constitute a warranty of future performance under section 400.2–725(2), the terms of the warranty must unambiguously indicate that the manufacturer is warranting the future performance of the goods for a specified period of time. *See Standard Alliance Industries, Inc. v. Black Clawson Co.,* 587 F.2d 813, 820–21 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). The terms of both the alleged Shatterproof express warranties in the instant case contain explicit and unambiguous reference to specified periods of time during which the warranty is to be in effect. The count I warranty purportedly extends for a period of ten years from the date of acceptance; the count III warranty extends for twenty years from the date of manufacture of the goods. Thus, it would seem clear that both warranties meet the *Binkley* requirement of reference to a future time. *See generally Black Clawson, supra,* 587 F.2d at 820–21; J. White & R. Summers, Uniform Commercial Code at 419 (1980).

Nevertheless, the district court, focusing on the language in the alleged warranties relating to replacement of defective panels, concluded that these were not warranties of future performance, but only replacement commitments. We do not believe that the presence of language limiting the remedy to replacement of defective materials, by itself, is determinative of the exact nature of the warranties in question. In reaching its conclusion that the warranties were replacement commitments rather than express warranties of future performance, the district court apparently failed to distinguish between the existence of an express warranty of future performance and a limitation *of remedy* in the event of a breach of a warranty. This distinction is clearly contemplated in the statutory scheme of the Uniform Commercial Code, and appears to be recognized by Missouri courts. *See, e.g., Givan v. Mack Truck, Inc.,* 569 S.W.2d 243 (Mo.App.1978) (express warranty with remedy limited to repair or replacement given full effect when remedy failed of its essential purpose).

Under the Code an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. Mo.Ann.Stat. § 400.2–313. Section 400.2–719 allows limitation of the buyer's remedy to repair and replacement of nonconforming goods, but establishes that where an exclusive or limited remedy fails of its essential purpose, all remedies provided by the Code may be available.

■ We conclude that the language of the alleged Shatterproof warranties in the instant case clearly follows the general statutory scheme embodied in these sections of the Uniform Commercial Code, and that the complaint alleges the existence of a warranty explicitly extending to the future performance of the goods in a specified manner for periods of ten years and twenty years, respectively, with a limitation of the remedy to replacement in the event of a breach of those warranties.[5] *See Standard Alliance Industries, Inc. v. Black Clawson Co., supra,* 587 F.2d at 821 & n. 17. Conse-

---

5. The effect of the limitation of the remedies for breach of the express warranties on the appellants' Shatterproof express warranty causes of action remains to be determined in subsequent proceedings before the trial court. Appellants have alleged that Shatterproof has refused to cure the defects in the vision and spandrel panels, and, specifically, that Shatterproof has refused to replace defective panels with panels of the original color tint, resulting in a checkerboard appearance of the building. In this regard it should be noted that when a manufacturer limits its obligation to replacement of defective goods, "and repeatedly fails to correct the defect as promised within a rea-

sonable time, it is liable for the breach of that promise as a breach of warranty." *Givan v. Mack Truck, Inc., supra,* 569 S.W.2d at 247. In this situation the limited exclusive warranty is considered to fail of its essential purpose under Mo.Ann.Stat. § 400.2–719(2) and "all contractual remedies are available to the buyer." 569 S.W.2d at 247. *See also Soo Line R. v. Fruehauf Corp.,* 547 F.2d 1365, 1370–71 & n. 6, n. 7 (8th Cir.1977) (refusal by seller to repair or replace as promised in limited remedy provision causes limited remedy to fail of its essential purpose and renders the limitation unenforceable).

quently, under section 400.2–725(2) the cause of action on counts I and III accrued when Murray and The Citadel discovered or should have discovered that the glass panels were defective, and counts I and III of the complaint should not have been dismissed on the grounds of the statute of limitations.

### b. *Anaconda*

■ In count VI of their complaint, appellants alleged that they were the third party beneficiaries of a contract between Anaconda and Boain under which Anaconda expressly warranted that the aluminum framing it supplied would conform to the specifications in the Murray and Boain contract, and would be free from defective design, material and workmanship. Appellants also alleged that the framing Anaconda supplied was defective and that Anaconda has breached its express warranties. The district court held that any possible express warranty running from Anaconda to the appellants was not a warranty explicitly extending to future performance, and therefore, any cause of action accrued at the time of delivery of the goods in 1974–76, and was barred by the section 400.2–725(1) four year statute of limitations.

On appeal, Murray and The Citadel do not attempt to argue that the alleged Anaconda express warranty extends to future performance of the aluminum framing. Instead, appellants contend that it was arbitrary and capricious for the district court to apply the Uniform Commercial Code statute of limitations for the sale of goods to this transaction because it was not possible for the court to determine from the face of the complaint if the express warranty by Anaconda related predominately to the services rather than goods.

■ This argument has no merit whatsoever. There is absolutely nothing contained in appellants' complaint to indicate that the Anaconda contract and express warranty was for anything other than goods. Moreover, appellants admit that the only services conceivably involved would be the technical advice and drawings related to the design of the aluminum framing supplied by Ana-

conda. Even if we were to construe this as an allegation of a transaction for services, we believe that such services were incidental to the sale of the goods. *See Bonebrake v. Cox,* 499 F.2d 951, 958–61 (8th Cir.1974). As we stated in *Bonebrake,* the test for whether contracts containing services mixed with the sale of goods are to be governed by the U.C.C. statute of limitations for the sale of goods:

> is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.,* contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.,* installation of a water heater in a bathroom).

*Id.* at 961 (footnote omitted). Applying this test to appellants' count VI express warranty claim against Anaconda, we have no doubts that the contract pleaded by the appellants is predominately for the sale of goods. Therefore, the section 400.2–725 four year statute of limitations applies and count VI against Anaconda was properly dismissed by the district court.

### III. *Implied Warranties*

■ Appellants, as users and consumers of the glass panels and framing, sought recovery against Shatterproof (count II) and Anaconda (count VII) for breaches of implied warranties of merchantability and fitness for a particular purpose. Although the district court concluded that under Missouri law remote purchasers may bring implied warranty actions to recover for economic loss, the court held that such causes of action arise under the Uniform Commercial Code and are, therefore, controlled by the four year statute of limitations in section 400.2–725. *See R.W. Murray Co. v. Shatterproof Glass Corp., supra,* 529 F.Supp. at 299. Because the complaint was filed over four years after the implied warranty causes of action accrued, the district court dismissed counts II and VII of the complaints as barred by the statute of limitations.

The district court based its holding on *Groppel Co. v. United States Gypsum Co.*, 616 S.W.2d 49 (Mo.App.1981) (application for transfer to Mo.S.Ct. denied June 8, 1981), a case in which a subcontractor (Groppel) brought suit against the manufacturer (U.S. Gypsum) of fireproofing material supplied to the subcontractor by another company (Spray Don Research Corp.). Groppel sought recovery for "economic loss" [6] stemming from defects in the fireproofing material. In the course of its opinion, the Missouri court extensively discussed Missouri law regarding implied warranties, but did not address the issue of which statute of limitations applies to an implied warranty action by a remote purchaser for economic loss arising in the sale of goods context. However, it seems clear from the court's opinion that such an implied warranty action is controlled by the Uniform Commercial Code, including the four year statute of limitations provided in Mo.Ann.Stat. § 400.2–725. The court concluded that the implied warranty of merchantability provided in Mo.Ann.Stat. § 400.2–314 [7] extended to remote purchasers even when only economic loss is claimed. *See Groppel Co. v. United States Gypsum, supra,* 616 S.W.2d at 56–59. The court reasoned that while the code does not specifically state that U.C.C. implied warranties extend to remote purchasers, section 400.2–318 and the comments to that section clearly indicate that judicial extension of implied warranties to remote purchasers is proper.[8] *See Groppel Co. v. United States Gypsum Co., supra,* 616 S.W.2d at 57, 60.

After reviewing the law in Missouri concerning implied warranty actions for economic loss in the sale of goods context, we cannot conclude that the district court incorrectly applied local law or that the court's interpretation of that law is "fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc., supra,* 658 F.2d at 654; *see Bazzano v. Rockwell International Corp., supra,* 579 F.2d at 469. Therefore, we affirm the district court's dismissal of the appellants' count II and count VII claims for breach of implied warranty.[9]

## IV. *Negligence*

In count IV of their complaint appellants alleged that Shatterproof negligently designed and manufactured the glass panels it

---

**6.** *Groppel Co. v. United States Gypsum Co.,* 616 S.W.2d 49, 55 (Mo.App.1981). The court defined economic loss as " 'includ[ing] cost of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.' " *Id.* at 55 n. 5 (citations omitted).

**7.** Section 400.2–314 provides in part: "Unless excluded or modified (section 400.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

**8.** Mo.Ann.Stat. § 400.2–318 provides:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Comment 3 to section 400.2–318 states:

This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. *Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.* (Emphasis added.)

*See generally* J. White & R. Summers, Uniform Commercial Code at 406–07 (1980).

**9.** We do not believe this result is in conflict with the recent decision in *Witherspoon v. General Motors Corp.*, 535 F.Supp. 432 (W.D.Mo. 1982). *Witherspoon* did not address the question of the statute of limitations applicable in Missouri to an implied warranty suit by a remote purchaser for *economic loss.* Instead, the court held only that under Missouri law an action for *personal injuries* arising out of a breach of an implied warranty is not governed by the four year Uniform Commercial Code statute of limitations, but by the five year statute of limitations for actions for personal injuries not arising on contract and not otherwise enumerated. *See* Mo.Ann.Stat. § 516.120 (Vernon 1952).

supplied. Similarly, count VIII contains an allegation that Anaconda negligently designed and manufactured the aluminum framing. As a direct result of this negligence by Anaconda and Shatterproof, appellants alleged that they have suffered damages relating to replacement of the defective panels and a substantial diminution in value of the building because of the checkerboard appearance stemming from the unavailability of matching panels.

The district court granted the appellees' motion to dismiss these negligence counts for failure to state a cause of action on the grounds that an implied warranty action was an adequate and appropriate remedy and that "[o]n the facts of this case, there is no justification for allowing [plaintiffs] to bring a parallel claim for economic loss based on a negligence theory." *R.W. Murray Co. v. Shatterproof Glass Corp., supra,* 529 F.Supp. at 300 (citing *Crowder v. Vandendeale,* 564 S.W.2d 879, 882–84 (Mo.1978) (en banc)). Alternatively, the district court held that even if a negligence claim were permitted in this situation under Missouri law, it would be based upon the Uniform Commercial Code and the U.C.C. four year statute of limitations would bar plaintiffs' negligence claim. *R.W. Murray Co. v. Shatterproof Glass Corp., supra,* 529 F.Supp. at 300.

■ Initially we note that in reviewing the district court's determination of Missouri law in the instant case, our task, as was that of the district court, "is not to formulate the legal mind of the state, but merely to ascertain and apply it." *Aguilar v. Flores,* 549 F.2d 1161, 1163 (8th Cir.1977). Generally, we look to the decisions of the highest court of the state as the final authority on state law. *West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Fidelity Trust Co. v. Field,* 311 U.S. 169, 177, 61 S.Ct. 176, 177, 85 L.Ed. 109 (1970). "When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restrict-

ed." *West v. American Telephone and Telegraph Co., supra,* 311 U.S. at 236, 61 S.Ct. at 183 (citation omitted). However,

[a] state is not without law save as its highest court has declared it, * * * and it is the duty of [federal courts] in every case to ascertain from *all the available data* what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

Where an intermediate appellate state court rests its considered judgment upon the rule of law which is announced, that is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*

*Id.* 311 U.S. at 236–37, 61 S.Ct. at 183 (citations omitted) (emphasis added).

In applying these general guidelines to the question of whether or not appellants have stated a cause of action in negligence we are faced with problems of interpretation of state law in that Missouri law on the subject appears to be somewhat unclear and conflicting. In *Crowder v. Vandendeale, supra,* relied upon by the district court in the instant case, the vendee of the original purchaser of a home brought a negligence action against the building contractor alleging that the contractor had failed to construct the house in a good, workmanlike manner resulting in cracking and settling of the bricks, foundation, and concrete in the house. Plaintiffs sought damages for expenses incurred in repairing the house and driveway. The Missouri Supreme Court concluded that "liability imposed for mere deterioration or loss of bargain resulting from latent structural defects is contractual," 564 S.W.2d at 881, and that an implied warranty cause of action provided an adequate and appropriate remedy in such cases. *Id.* at 884. Consequently, the court held that recovery in negligence was not authorized in Missouri for mere loss of bargain or deterioration resulting from latent structur-

al defects. *Id.* The court indicated that liability in tort is only appropriate in cases in which recovery is sought for "personal injury, including death or property damage either to property other than the property sold or to the property sold where it was rendered useless by some violent occurrence." *Id.* at 881.

In reaching its conclusion the court in *Crowder* reasoned that liability imposed in implied warranty is based on the "transaction of purchase" and the focus is on the "*quality* of the home sold rather than the *conduct* in building it." *Id.* at 881, 882. The standard for determining liability is whether the "home is of reasonable quality or reasonable fitness" and this standard is an implied term in any sale of a new home. *Id.* In contrast, negligence theory focuses on both "conduct and result," and the "standard of negligence is the requirement that the actor use ordinary care and skill." *Id.* This duty is imposed to protect persons and property from physical harm.

> However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality.* This standard of quality must be defined by reference to that which the parties have agreed upon. In the absence of some express agreement to the contrary, the standard of quality will be presumed to be that of the implied warranty term—reasonable fitness for use as a residence.
>
> It is apparent from the foregoing that if recovery for this type of loss is allowed in negligence, the remedy would be dependent in every instance upon the implied warranty term of every new home sale * * *.

*Id.*

Finally, it should be noted that the court explicitly rejected the fact that tort statute of limitations might allow a cause of action in negligence in some cases in which the warranty statute of limitations had run, as a justification for allowing recovery in negligence as well as implied warranty. The court concluded that any assistance to purchasers in such a case would not significantly advance policy, and that the type of defect presented in this case "may be expected to become manifest within the period established by the statute of limitations for warranty." *Id.* at 883.

Despite the fact that the court in *Crowder* only addressed the relationship between common law negligence and common implied warranty [10] in the context of a suit by purchasers of a home for damages stemming from deterioration or loss of bargain, it would appear that its general principles would apply to the negligence cause of action in the present case arising in a U.C.C. sale of goods context. However, a recent Missouri Court of Appeals decision, *Groppel Co. v. United States Gypsum Co., supra,* 616 S.W.2d 49 (Mo.App.1981), presents an obstacle to this conclusion.

As noted previously, *Groppel* involved a negligence suit by a subcontractor against the manufacturer of fireproofing materials seeking recovery for economic loss stemming from the sale of an allegedly defective product. On January 27, 1981, the Missouri Court of Appeals for the Eastern District of Missouri held that a remote purchaser may maintain a common law negligence action seeking recovery for economic loss against the manufacturer for failure to supply a merchantable product. The court reasoned that the negligence duty arises from the Uniform Commercial Code implied warranty of merchantability contained in Mo.Ann. Stat. § 400.2–314 which states in part that goods shall be "fit for the ordinary purposes for which such goods are used." The court distinguished *Crowder v. Vandendeale, supra,* primarily on the grounds that: (1) *Groppel* involved the sale of goods under the U.C.C., whereas *Crowder* involved real estate and the common law implied warranty of habitability which lacks the clarifying

---

10. It should be noted that the common law implied warranty of habitability is considered by Missouri courts to be closely analogous to the implied warranty of merchantability found in section 2–314 of the Uniform Commercial Code. *See O'Dell v. Custom Builders Corp.,* 560 S.W.2d 862, 870 (Mo.1978) (en banc).

language of the U.C.C.; (2) *Crowder* addressed recovery for "deterioration," but *Groppel* involved "a product alleged to be unfit for its intended purpose from the time it was manufactured." *Groppel Co. v. United States Gypsum Co., supra,* 616 S.W.2d at 60.

Even if we were to conclude that the court in *Groppel* adequately distinguished the Missouri Supreme Court's *Crowder* decision, the *Groppel* decision does not represent the last word in Missouri on the negligence issue. On December 1, 1981, the Missouri Court of Appeals for the Western District of Missouri decided the case of *Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc.,* 625 S.W.2d 906 (Mo. App.1981). In *Clevenger* the vendee of the original purchaser of a grain storage silo sued the manufacturer of the silo in negligence, express warranty, and strict liability for damages when the silo was destroyed in a tornado. The plaintiff alleged that the defendant negligently manufactured, designed, and advertised the product, and failed to adequately test and warn. The court concluded the sale of the silo to the original purchaser was governed by the U.C.C. Without citing *Groppel Co. v. United States Gypsum Co., supra,* the court held that *Crowder v. Vandendeale, supra,* applied. According to the court, the important controlling principle from *Crowder* was that "recovery in tort for pure economic damages [is limited] to cases where there has been personal injury, or property damage either to property other than the property sold, or when it was rendered useless by some violent occurrence." *Clevenger & Wright Co. v. A.O. Smith Harvestore Co., supra,* 625 S.W.2d at 909 (citation omitted). The court held that, under this principle, the plaintiff was precluded from any recovery for mere economic loss based on negligence, and that recovery was limited to those remedies supplied by contract law. *Id.*

Other recent Missouri decisions, while not directly addressing the negligence question presented in the instant case, make it clear that the basic principle announced

in *Crowder* is applicable to actions seeking recovery for economic loss arising from defective products in the U.C.C. sale of goods context. In *Gibson v. Reliable Chevrolet, Inc.,* 608 S.W.2d 471 (Mo.App.1980) (application for transfer to the Missouri Supreme Court denied January 13, 1981), a suit in strict liability to recover damages to an automobile resulting from a defective temperature gauge, the Court of Appeals for the Southern District of Missouri indicated that, under *Crowder,* suits for economic loss, not resulting from some violent occurrence, must be brought under the warranty provision of the U.C.C. rather than in tort. *See id.* at 474–75. Similarly, in *Forrest v. Chrysler Corp.,* 632 S.W.2d 29 (Mo.App. 1982) (application for transfer to the Missouri Supreme Court denied May 17, 1982), a strict liability suit against the manufacturer of a truck seeking recovery for economic loss arising out of alleged defects in the truck, the court reiterated the Missouri Supreme Court's statement in *Crowder* that "the liability imposed for 'mere deterioration or loss of bargain resulting from latent structural defects is contractual.'" *Id.* at 31 (citation omitted). Furthermore, the court concluded that in light of *Crowder v. Vandendeale, supra,* and *Gibson v. Reliable Chevrolet, Inc., supra,* it was clear that under the law of Missouri recovery is precluded in "strict liability for defective products *where the loss sustained is economic only.* In that posture *plaintiff is restricted to remedies afforded under the Uniform Commercial Code and the general law of sales. Essentially those are for breach of warranty, express or implied." Forrest v. Chrysler Corp., supra,* 632 S.W.2d at 31 (emphasis added).

After reviewing the foregoing cases which we believe constitute "all of the available data" relating to Missouri law on the negligence question presented in the present case, *see West v. American Telephone and Telegraph Co., supra,* 311 U.S. at 237, 61 S.Ct. at 183, we conclude that the general principle in *Crowder v. Vandendeale, supra, i.e.,* that recovery in tort is limited to cases in which there has been

"personal injury, or property damage either to property other than the property sold, or to the property sold when it was rendered useless by some violent occurrence," precludes the appellants from pursuing a negligence cause of action seeking recovery for only economic loss.[11] We recognize that the Missouri Court of Appeals decision in *Groppel Co. v. United States Gypsum, supra,* appears to support appellants' cause of action in negligence seeking recovery for economic loss rising from the failing of a manufacturer to supply a merchantable product. However, we believe that *Crowder, Clevenger & Wright, Gibson* and *Forrest,* provide "other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co., supra,* 311 U.S. at 237, 61 S.Ct. at 183. Accordingly, we affirm the decision of the district court dismissing appellants' negligence claims on the grounds that appellants have failed to state a cause of action.[12]

## V. Misrepresentation

In count V of their complaint the appellants alleged that Shatterproof misrepresented the quality of the glass panels it designed, manufactured and supplied for appellants' building. The district court held that section 400.2–721 of the Missouri Uniform Commercial Code required the application of the four year statute of frauds contained in section 400.2–725 to claims for misrepresentation or fraud arising out of the sale of goods. *R.W. Murray Co. v. Shatterproof Glass Corp., supra,* 529 F.Supp. at 300. Because the alleged misrepresentation occurred more than four years prior to the time the instant suit was filed, the court dismissed the count V misrepresentation claim as being barred by the statute of limitations.

Appellants contend that the district court erred in reaching this conclusion, and that

**11.** Appellants also contend that the district court erred in construing their negligence claims as seeking recovery for economic loss. Because appellants allege in their complaint that the checkerboard appearance of the building resulting from the required replacement of defective glass panels with nonmatching colored panels has resulted in a diminution in value of the entire building and the loss of rental profits, they argue that they have sufficiently asserted damage to property other than the property sold. Therefore, even assuming that *Crowder v. Vandendeale, supra,* and *Clevenger v. A.O. Smith Harvestore Products, Inc., supra,* control their negligence claims, appellants contend that they have properly stated a cause of action in negligence. We cannot agree.

Although the Missouri courts apparently have not directly addressed this issue, it seems clear that general diminution in value of a building and loss of profits resulting from the failure of defective component goods supplied by a manufacturer is not the type damage within the contemplated coverage of the phrase "property damage * * * to property other than the property sold." *Crowder v. Vandendeale, supra,* 564 S.W.2d at 881. Instead, this type of damage clearly appears to be included within the Missouri definition of "economic loss." In *Groppel Co. v. United States Gypsum Co., supra,* 616 S.W.2d at 55 n. 5 the court stated: " 'Economic loss' " is distinguished from harm to person or damage to property: " 'Economic loss includes cost of repair and replacement of defective property which is the subject of the transaction, as well as *commercial loss for in-*

*adequate value and consequent loss of profits."* (Citations omitted, emphasis added.) *See generally* J. White & R. Summers, Uniform Commercial Code at 405–10. "[p]roperty damage, on the other hand, is the *Restatement's* 'physical harm * * * to [user's] property.' " *Id.* at 405 (citation omitted). *See Crowder v. Vandendeale, supra,* 564 S.W.2d at 882 (the Missouri Supreme Court indicated that negligence liability is imposed to protect people and property from *physical harm* ). *See, e.g., Oldham's Farm Sausage Co. v. Salco, Inc.,* 633 S.W.2d 177, 179–80 (Mo.App.1982) (application for transfer to Missouri Supreme Court denied June 14, 1982) (allegation that defective sausage chilling machine sold by defendant manufacturer ruined plaintiff's sausages and caused the plaintiff's loss of large amounts of expensive propylene glycol sufficiently alleged damages to "property other than the property sold"). In the absence of any allegation of physical harm to appellants' other property caused by the allegedly defective glass panels and aluminum frames sold by the appellees, we conclude that the district court did not err in considering the appellants' negligence claim to be for only economic loss, and, therefore, to be precluded under the principles in *Crowder v. Vandendeale, supra.*

**12.** In light of this conclusion, we need not address the district court's alternate holding that the Uniform Commercial Code statute of limitations applies to appellants' negligence claims and bars recovery.

the five year statute of limitations provided in Mo.Ann.Stat. § 516.120 (Vernon 1952) for actions grounded on fraud is the applicable statute of limitations.[13] Apparently, Missouri courts have not addressed the issue of whether the U.C.C. § 400.2–725 statute of limitations applies to a misrepresentation claim arising out of the sale of goods. Furthermore, we can find little guidance anywhere as to the construction and effect of section 400.2–721 of the Uniform Commercial Code in relationship to the statute of limitations applicable to fraud or misrepresentation claims.

Section 400.2–721 provides:

Remedies for material misrepresentation or fraud include all remedies available under this article for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

Mo.Ann.Stat. § 400.2–721. The accompanying official comment states that the purpose of the section is:

To correct the situation by which remedies for fraud have been more circumscribed than the more modern and mercantile remedies for breach of warranty. Thus the remedies for fraud are extended by this section to coincide in scope with those for non-fraudulent breach. This section thus makes it clear that neither rescission of the contract for fraud nor rejection of the goods bars other remedies unless the circumstances of the case make the remedies incompatible.

*Id.,* Comment.

The district court based its conclusion that section 400.2–721 mandates the use of the U.C.C. statute of limitations in the instant case on *Alaska Airlines, Inc. v. Lockheed Aircraft Corp.,* 430 F.Supp. 134 (D.Alaska 1977), a case involving a suit by the purchaser of certain aircraft against the aircraft manufacturer seeking recovery stemming from alleged wing crack defects. In *Alaska Airlines* the district court, without discussion or analysis, simply stated that the plaintiff's "claims for fraud and misrepresentation (U.C.C. § 2–271) * * * are barred by the four year statute of limitations, contained in each state's U.C.C." 430 F.Supp. at 141. However, at least one other court which addressed the question of the applicable statute of limitations for fraud or misrepresentation claims arising out of the sale of goods has reached a different conclusion. In *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir.1979) the plaintiff sought recovery in fraud, breach of contract, and negligence from the manufacturer of an allegedly defective computer system. One of plaintiff's fraud claims contained allegations that the defendant fraudulently represented the capabilities of its system and that the plaintiff relied upon these misrepresentations in entering the contract. The Second Circuit held that the U.C.C. contract statute of limitations did not apply to claims for fraud in the inducement, but that the statute of limitations specifically relating to actions in fraud was applicable. *Id.* at 746–749. The court stated:

The case at bar does not involve any such attempt to dress up a contract claim in a fraud suit of clothes. The fraud Triangle alleges in Count I consisted of independent false representations, made before there ever was a contract between the parties, which led Triangle to enter into it. In other words, Triangle clearly alleges fraud that was extraneous to the contract, rather than a fraudulent nonperformance of the contract itself.

■■■ We note that appellants in the instant case characterize their misrepresentation claim as being one for fraudulent inducement to enter a contract, and that Missouri clearly recognizes such a cause of action. *See, e.g., Timmons v. Bender,* 601 S.W.2d 688 (Mo.App.1980); *Osterberger v.*

---

**13.** Mo.Ann.Stat. § 516.120(5) provides that the five year statute of limitations period applies to: "An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

*Hites Construction Co.,* 599 S.W.2d 221 (Mo. App.1980). Generally, claims based on misrepresentation or fraud are distinct from and contain different elements than claims grounded on breach of warranty or contract. *See* J. White & R. Summers, Uniform Commercial Code at 327. Furthermore, it would appear that under Missouri law the same set of operative facts may give rise to different causes of action and the application of more than one statute of limitations. *See, e.g., Scott v. Gibbons,* 611 S.W.2d 387 (Mo.App.1981) (transaction involving sale of land gave rise to a cause of action for misrepresentation, requiring application of the Mo.Ann.Stat. § 516.120 five year statute of limitations, and cause of action for breach of warranty requiring application of the Mo.Ann.Stat. § 516.110 ten year statute of limitations).

 We have searched section 400.2–721 and the accompanying commentary in vain for any language that would support the district court's conclusion that this section mandates the application of the U.C.C. section 400.2–725 four year statute of limitations in the instant case. In the absence of such an indication in the Uniform Commercial Code or other convincing authority to this effect, it must be concluded that section 400.2–725 simply has no bearing on the question of the statute of limitations applicable to the misrepresentation claim in the instant case, and that Mo.Ann.Stat. § 516.-120, which on its face applies to claims grounded on fraud, is the appropriate statute to apply to an otherwise sufficient misrepresentation claim. Consequently, we conclude that the district court's dismissal of the instant case as being barred by the section 400.2–725 statute of limitations is based on a misconception or misapplication of local law, and is unsupported by reasoned authority. *See Ancom, Inc. v. E.R. Squibb & Sons, Inc., supra,* 658 F.2d at 654; *Campbell v. Village of Silver Bay,* 315 F.2d 568, 575 (8th Cir.1963).

 Unless appellants' misrepresentation claim is otherwise insufficient to state a cause of action, appellants should be allowed to proceed under that theory. Viewing the allegations in appellants' misrepresentation claim in the light most favorable to the complaint, as we must under the standards governing motions to dismiss under Fed.R.Civ.P. 12(b)(6), *see Fusco v. Xerox Corp., supra,* 676 F.2d at 334, we believe that appellants sufficiently alleged the required elements to state a cause of action for fraud in the inducement to contract. Although we may have some doubts that the appellants will be able to prove all of the facts necessary to establish these elements, such doubts are not the proper basis for granting a Rule 12(b)(6) motion to dismiss for failure to state a cause of action. *See id.* Moreover, we can not say at this stage of the proceedings, based only on the complaint, that "it appears beyond doubt that the [appellants] can prove no set of facts in support of [their] claim which will entitle [them] to relief." *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

*Conclusion*

In summary, we affirm the district court's dismissal of the appellants' implied warranty claims (counts II and VII) and express warranty claim against appellee Anaconda (count VI) on the grounds that they are barred by the Mo.Ann.Stat. § 400.-2–725 Uniform Commercial Code four year statute of limitations. Furthermore, we agree with the district court that appellants are not entitled to maintain a cause of action in negligence under Missouri law in the circumstances of the present case, and, therefore, we affirm the dismissal of appellants' negligence claims (counts IV and VIII). However, we do not agree with the district court that the appellants' express warranty (counts I and III) and misrepresentation (count V) claims against appellant Shatterproof are barred by the section 400.-2–725 statute of limitations, and, accordingly, we reverse and remand these claims to the district court for further proceedings.