Sherrie Kay GIBSON,
Plaintiff–Respondent,

v.

RELIABLE CHEVROLET, INC.,
Defendant–Appellant,

and

General Motors Corporation, a Delaware Corporation, Defendant.

No. 11655.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 16, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 30, 1980.

Application to Transfer Denied
Jan. 13, 1981.

---

**3.** Instruction number one also included a definition of "malice aforethought."

**4.** Repealed by Laws of Mo., 1977, p. 662.

Gibson & Anderson, Kimberling City, for plaintiff–respondent.

Dickey, Allemann & McCurry, Springfield, for defendant-appellant.

TITUS, Presiding Judge.

Plaintiff in November 1976 purchased from defendant, an automobile agency, a new 1977 Chevrolet. In May 1978, after the regular warranty had expired in time and the vehicle had been operated some 23,500 miles, plaintiff was driving the Chevrolet from Tulsa, Oklahoma, to Springfield, Missouri. As the car neared Miami, Oklahoma, it ceased functioning because the engine's heater core had ruptured permitting the coolant to escape. This created excessive heat and irreparable damage to the motor which had to be replaced. Thereafter, plaintiff sued defendant for actual and punitive damages. Plaintiff's verdict directing instruction (similar to MAI 25.04) submitted defendant's strict liability in tort as enounced in 2 Restatement, Law of Torts, Second, § 402 A [1], and adopted for application in Missouri via *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969). The jury awarded plaintiff $1,140 actual damages and $2,000 punitive damages. Defendant appealed when its post–trial efforts proved futile in the court nisi.

*Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978) stated: "*Keener* and the cases it relied on were for personal injury, including death, or property damage either to property other than the property sold or *to the property sold where it was rendered useless by some violent occurrence.* [our emphasis]. Those are situations where strict liability was found to be appropriate. The liability clearly is for tort in those instances, regardless of how labeled."

In this case no personal injury, including death, is involved. Likewise, no property damage was experienced to property other than the automobile sold by defendant. Ergo, under *Crowder*, supra, for there to be an obligation on defendant's part under strict liability in tort, it was incumbent upon plaintiff to establish that the Chevro-

---

1. § 402 A: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consum-er without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

let had been rendered useless by some violent occurrence. On the other hand, if there was no violent occurrence as contemplated in *Crowder*, it further remains to be determined whether or not strict liability in tort is to be extended in this state to cover situations where only the product itself suffers physical damage sans violent occurrences. See, 72 C.J.S.Supp. Products Liability § 33, pp. 52–53; 63 Am.Jur.2d, Products Liability, § 140, pp. 147–148. The Appendix to this opinion is an undertaking to summarize all of the Missouri reported decisions descending from *Keener*, supra. In our opinion, none come close to resolving the situation and problem at hand.

■ When plaintiff bought the Chevrolet, it was equipped, inter alia, with a water temperature gauge rather than a water temperature warning light. According to plaintiff, the needle on the gauge always "rested on the zero position" from the time she bought the car until the engine overheated and was damaged some 17 or 18 months later. Although plaintiff had experienced some minor mechanical problems with the automobile, which were repaired and corrected by defendant, she had never complained to defendant nor anyone regarding the fact the water temperature gauge constantly remained on zero because, so she testified, she supposed this was what the gauge should indicate unless the water temperature became excessive. In fine, plaintiff's theory was that if the gauge had operated properly she would have been advised the motor was overheating in time to have avoided destruction of the engine. The man who replaced the damaged engine testified he had also installed another water temperature gauge in plaintiff's automobile because the existing gauge was inoperable. Employees of defendant verified that plaintiff had never complained regarding the gauge. Defendant's employee who inspected the vehicle before it was initially delivered to plaintiff and its employee who

checked the gauge after the motor damage had occurred, testified the gauge was functioning properly at the times of their respective inspections. Of course, as fact–finders, the jurors had leave to believe or disbelieve all, part or none of the testimony of any witness. *Robinson v. St. John's Medical Center, Joplin*, 508 S.W.2d 7, 11[3] (Mo.App.1974).

■ There is respectable authority[2] that a manufacturer or distributor may be strictly liable in tort to an ultimate purchaser for pecuniary loss suffered by the purchaser through diminution of value of the purchased product caused by defects, without personal injury or third–party property damage. On the other hand, the cases allowing recovery in other jurisdictions of equal respectable authority involve a violent occurrence arising out of the product's defective condition. Whether it be a vehicular collision [See, e. g., *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965); *MacDougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676 (1969)], a fire or explosion [See, e. g., *State Farm Mutual Automobile Insurance Co. v. Anderson–Weber, Inc.*, 252 Iowa 1289, 110 N.W.2d 449 (1961); *Morrow v. Caloric Appliance Corp.*, 372 S.W.2d 41 (Mo. banc 1963); *Gherna v. Ford Motor Co.*, 246 Cal.App.2d 639, 55 Cal. Rptr. 94 (1966); *Hales v. Green Colonial Inc.*, 490 F.2d 1015 (8th Cir. 1974); *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248 (Alaska 1977)] or the collapse of a building or equipment [See, e. g., *John R. Dudley Const., Inc. v. Drott Mfg. Co.*, 66 A.D.2d 368, 412 N.Y.S.2d 512 (1979); 72 C.J.S.Supp. Products Liability § 50, pp. 72–74], the cases fall within the confines of *Crowder*, supra, that strict tort liability will not be imposed for property damage unless it be "rendered useless by some violent occurrence."

2. *Santor v. A and M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670 (1965); *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970); Prosser, Torts, 4th Ed., § 101, pp. 666–667. Accord, *Randy Knit-wear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962); *Arrow Transportation Co. v. Fruehauf Corp.*, 289 F.Supp. 170 (D.C.Or.1968).

Our Supreme Court has yet to precisely define what is meant by "violent occurrence" as used in *Crowder*, supra. In our opinion there can be little doubt but that the rupture of the engine's heater core which permitted the coolant to escape and to cause excessive heat to the motor constituted an occurrence. However, such an occurrence which requires some 17 or 18 months and the driving of 23,500 miles to transpire hardly comports with the meaning of violence as used in the context employed by *Crowder*. As a general rule, a calamitous event threatening bodily harm or damage to other property is required to create a "violent occurrence," for mere deterioration or internal breakage due to a defect in the product is not sufficient. *Cloud v. Kit Manufacturing Co.*, supra; *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976); *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1975); *Mid Continent Aircraft v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Tex.1978). See also, *Smith v. Ford Motor Co.*, 327 S.W.2d 535 (Mo.App.1959), distinguishing suits for damages for replacement and repairs from those "where there have been an injury and an element of tort present."

■ The requirement of a "violent occurrence" where damage occurs to the product itself comports with the Restatement's requirement (see n. 1) that a product be "unreasonably dangerous" in the hands of the consumer. See also 2 Restatement, Law of Torts, Second, § 402 A, Comment i. Such an interpretation of "violent occurrence" is justified in the historical development of and the policy reasons supporting the doctrine of strict liability. *Mid Continent Aircraft v. Curry County Spraying Service, Inc.*, supra; *Russell v. Ford Motor Co.*, 281 Or. 587, 575 P.2d 1383 (1978); *Price v. Gatlin*, 241 Or. 315, 405 P.2d 502 (1965). In *Morrow v. Caloric Appliance Corp.*, supra, 372 S.W.2d at 53, the observation was made that other jurisdictions imposed strict liability where the defect renders the product "imminently dangerous" when put to its intended use. It is our conclusion that under the circumstances peculiar to this case, plaintiff's pecuniary loss did not result from

a violent occurrence or from a product which was imminently dangerous when sold.

■ Where only the product itself suffers physical damage in the absence of some violent occurrence, many jurisdictions deny recovery in strict liability in tort because it would amount to a judicial assumption of legislative prerogatives and would vitiate clear statutory rights found in the law of sales and the Uniform Commercial Code (UCC). *Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968 (Del.1980); *Morrow v. New Moon Homes, Inc.*, supra, 548 P.2d 279; *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). As said in *Cloud v. Kit Manufacturing Co.*, supra, 563 P.2d at 251: "The primary problem which arises results from the attempt to distinguish between economic loss and direct property damage. We recognize that the line between economic loss and direct property damage is not always easy to discern, particularly when the plaintiff is seeking compensation for loss of the product itself. We cannot lay down an all inclusive rule to distinguish between the two categories; however, we note that sudden and calamitous damage will almost always result in direct property damage and that deterioration, internal breakage and depreciation will be considered economic loss. In their attempts to distinguish between direct property damage and economic loss, the courts should be guided by the existence of, and underlying purposes for, the Uniform Commercial Code warranty actions." To like effect see: *Hawkins Construction Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973); *Chrysler Corp. v. Taylor*, 141 Ga.App. 671, 234 S.E.2d 123 (1977); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977); *Cooley v. Salopian Industries, Ltd.*, 383 F.Supp. 1114 (1974); 2 Restatement, Law of Torts, Second, § 402 A, Comment m.

Plaintiff's plight in this case smacks of plaintiff's plight in *Long v. Jim Letts Oldsmobile, Inc.*, supra, 217 S.E.2d 602, where the car's engine was " 'running hot and

blowing out the liquid in the radiator.'" When neither the dealer nor the manufacturer corrected the problem, plaintiff sued for damages for repairs not warranty—covered, time lost from work, loss of use, diminution in value, inconvenience, and punitive damages. Both the trial and appellate courts determined that damages were not compensable in tort but in contract. The appellate court said (Id. at 604): "In the present case, the duty of the manufacturer was to produce a car that would not overheat. The duty of the seller—repairman was to fix the car so that it would not overheat. These duties arose, in both cases, solely from the contract between plaintiff . . . and these two defendants. The breach of that duty . . . amounts only to a breach of the contractual duties of the defendants."

In our opinion, as there was no violent occurrence as contemplated in *Crowder,* supra, as the economic loss resulted from internal breakage and as we see no cause to judicially emasculate the warranty provisions of the UCC, we hold plaintiff and the trial court misconceived plaintiff's action to be in tort rather than in contract. In such circumstances the judgment is reversed and remanded for a new trial. *Katz v. Slade,* 460 S.W.2d 608, 614[3] (Mo.1970); *State ex inf. Danforth v. Kansas City Firefighters Local No. 42, A.F.L.–C.I.O.,* 585 S.W.2d 94, 98[7] (Mo.App.1979); *State ex rel. Reid v. Kemp,* 574 S.W.2d 695, 697[2] (Mo.App. 1978); *Russell v. Allen,* 496 S.W.2d 290, 296[16] (Mo.App.1973); *Freese v. Kellison,* 482 S.W.2d 538, 543[11] (Mo.App.1972). Also, as the other trial errors complained of by defendant on this appeal are not likely to reoccur in the new trial, they will not be discussed here.

Reversed and remanded.

FLANIGAN, C. J., and GREENE and PREWITT, JJ., concur.

## APPENDIX

*Personal injury or death :*

*Blevins v. Cushman Motors,* 551 S.W.2d 602 (Mo. banc 1977). Personal injuries resulting from upsetting of golf cart.

*Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780 (Mo. banc 1977). Personal injuries resulting from fall from bicycle.

*Keener v. Dayton Electric Manufacturing Company,* 445 S.W.2d 362 (Mo.1969). Wrongful death action. Deceased electrocuted by defective sump pump.

*Williams v. Deere & Co.,* 598 S.W.2d 609 (Mo.App.1980). Personal injuries caused by tractor jumping into gear.

*Mead v. Corbin Equipment, Inc.,* 586 S.W.2d 388 (Mo.App.1979). Wrongful death action. Deceased crushed by trash compactor.

*Braun v. General Motors Corp.,* 579 S.W.2d 766 (Mo.App.1979). Personal injuries to auto driver hurt in accident allegedly caused by defective rearview mirror.

*Brawner v. Liberty Industries, Inc.,* 573 S.W.2d 376 (Mo.App.1978). Personal injuries (burns) sustained by child in opening gasoline container.

*Cryts v. Ford Motor Co.,* 571 S.W.2d 683 (Mo.App.1978). Personal injuries resulting from defective automobile armrest.

*Gabbard v. Stephenson's Orchard, Inc.,* 565 S.W.2d 753 (Mo.App.1978). Personal injuries caused by collapsing ladder.

*Fowler v. S–H–S Motor Sales Corp.,* 560 S.W.2d 350 (Mo.App.1977). Personal injuries and property damage resulting from one–car accident. Judgment for defendant affirmed.

*Weatherford v. H. K. Porter, Inc.,* 560 S.W.2d 31 (Mo.App.1977). Personal injuries sustained when hydraulic jack broke.

*Rogers v. Toro Manufacturing Company,* 522 S.W.2d 632 (Mo.App.1975). Personal injuries resulting from self–propelled lawn mower accident.

*Bender v. Colt Industries, Inc.,* 517 S.W.2d 705 (Mo.App.1974). Personal injuries. Revolver fell from pocket, discharged and injured plaintiff.

*Williams v. Ford Motor Company,* 494 S.W.2d 678 (Mo.App.1973). Personal injuries sustained when car struck tree due to faulty steering mechanism.

*Brissette v. Milner Chevrolet Company,* 479 S.W.2d 176 (Mo.App.1972). Personal

injuries due to automobile leaving road due to tire failure.

*Lifritz v. Sears, Roebuck and Company*, 472 S.W.2d 28 (Mo.App.1971). Personal injuries sustained when ladder sold by defendant collapsed.

*Rockett v. Pepsi Cola Bottling Company*, 460 S.W.2d 737 (Mo.App.1970). Personal injury resulting from drinking soda containing a foreign substance.

*Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943 (Mo.App.1970). Wrongful death action. Plaintiff's father killed while working on dump truck manufactured by one defendant and sold by second defendant.

*Williams v. Ford Motor Company*, 454 S.W.2d 611 (Mo.App.1970). Personal injuries. See, *Williams v. Ford Motor Company*, supra, 494 S.W.2d 678.

*Property damage* :

*Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565 (Mo.App.1977), 89 A.L.R.3d 196. Suit based on strict liability against seller for property damage due to sudden fire developing in television set. Question of restrictions on property damage not involved.

*Giberson v. Ford Motor Company*, 504 S.W.2d 8 (Mo.1974). Property damages on bystander theory as result of multiple automobile collision.

*Strict liability enounced in Keener v. Dayton Electric Manufacturing Company*, supra, 445 S.W.2d 362, *not decided or held inapplicable:*

*Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. banc 1978). Liability imposed for mere deterioration or loss of bargain resulting from latent structural defects in house held to be contractual and not subject to strict liability in tort.

*Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo. banc 1972). At first blush, opinion seems to apply strict liability in tort for latent defects in house sold. However, in *Crowder*, supra, it said the recovery allowed in *Old Warson* could be justified on contractual basis and not on strict liability in tort.

*State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970). Ac-

tion in prohibition regarding single act long arm statutes.

*Portman v. Sinclair Oil Company*, 518 S.W.2d 625 (Mo.1975). As case involved performance of services and not "a product or parts manufactured, sold or constructed by the defendant", it was a case of negligence and not strict liability.

*Katz v. Slade*, 460 S.W.2d 608 (Mo.1970). Personal injury action submitted on erroneous theory of strict liability.

*Fields v. Berry*, 549 S.W.2d 122 (Mo.App. 1977). Personal injuries sustained in automobile accident. *Keener* not controlling in negligence action.

*Cumby v. Farmland Industries, Inc.*, 524 S.W.2d 132 (Mo.App.1975). Suit by discharged employee for violating "service letter statute".

*State ex rel. Apco Oil Corporation v. Turpin*, 490 S.W.2d 400 (Mo.App.1973). Mandamus by dealer to bring in foreign manufacturer of alleged defective product.

*Warriner v. Eblovi*, 485 S.W.2d 700 (Mo. App.1972). Personal injuries arising out of rear–end auto collision held action for negligence, not strict liability.