576 F.Supp. 1122 (1983)
CITY OF CLAYTON, Plaintiff,
v.
GRUMMAN EMERGENCY PRODUCTS, INC., Defendant and Third-Party Plaintiff,
v.
The WARNER AND SWASEY COMPANY, Third-Party Defendant.
No. 82-0723-C(4).
United States District Court, E.D. Missouri, E.D.
December 13, 1983.
*1123 Edgar Boedeker, St. Louis, Mo., for City of Clayton, plaintiff.
Richard Mueller, Coburn, Croft & Putzel, St. Louis, Mo., for Grumman Emergency Prods., Inc., defendant and third-party plaintiff.
Donald James, Brown, James & Rabbitt, St. Louis, Mo., for The Warner and Swasey Co., third-party defendant.

MEMORANDUM AND ORDER
CAHILL, District Judge.
The principal issue in this case is who is financially responsible for cracks in a fire truck's frame. The fire truck was purchased by the City of Clayton (Clayton) from the Howe Fire Apparatus Company, Inc., a company that was subsequently merged into Grumman Emergency Products, Inc. (Grumman). The frame was allegedly manufactured by The Warner and Swasey Company (Warner). According to Clayton's complaint, on or about April 21, 1981, Clayton noticed a "serious lean in the profile of the fire truck and subsequently discovered numerous cracks in the frame of said fire truck...." Clayton claims that because of these cracks the fire truck is inoperable. Clayton eventually sued Grumman as Howe's successor in interest on the basis of: (1) breach of implied warranties of merchantability and fitness for intended use, (2) strict product liability, and (3) negligent manufacture, assembly, and design. In turn, Grumman joined Warner as a third-party defendant, alleging: (1) breach of express warranties, (2) negligence, and *1124 (3) breach of implied warranties. Third-party defendant Warner now moves the Court for summary judgment against Grumman on all three counts of Grumman's third-party complaint. For summary judgment, Warner argues that under Missouri tort law Grumman cannot recover for injury to the product itself and that Grumman cannot recover under a contract breach of express or implied warranty cause of action because Warner disclaimed all such warranties. Warner also argues that there is no express indemnity contract between Warner and Grumman and that Grumman's breach of warranty claims are barred by the statute of limitations. In response, Grumman has filed its own motion for partial summary judgment against Clayton on Counts II and III of Clayton's complaint. In Grumman's motion for partial summary judgment, Grumman has adopted Warner's arguments pertaining to recovery under Missouri tort law for injury to the product itself. For the reasons discussed below, the Court grants summary judgment in favor of Warner on Count II of Grumman's third-party complaint and grants summary judgment in favor of Grumman on Counts II and III of Clayton's complaint.

I. TORT CLAIMS.

A. Recovery for Economic Loss.

Warner has made a forceful argument that under Missouri law a seller is not liable in negligence or strict liability for defective products where the only injury sustained was to the product itself, except if the product was rendered useless by some "violent occurrence." This type of injury is known as "economic loss." Instead, Warner contends that in such situations the buyer is limited to recovery under a contract theory, which may be subject to defenses based on disclaimer of warranties. See Crowder v. Vandendeale, 564 S.W.2d 879, 882-84 (Mo. en banc 1978); Forrest v. Chrysler Corp., 632 S.W.2d 29, 31-32 (Mo. App.1982); Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc., 625 S.W.2d 906, 909 (Mo.App.1981). Thus, Warner argues that because no violent occurrence occurred in this case Grumman cannot seek contribution from Warner as a joint tort-feasor under Missouri law.
Grumman has conceded to Warner's argument and has adopted Warner's argument in pursuing its motion for partial summary judgment against Clayton. Grumman asserts that, just as it may not recover against Warner based on a tort theory for economic loss, Clayton may not recover for such damages from Grumman.
Clayton responds with a citation to Groppel Company v. United States Gypsum Co., 616 S.W.2d 49, 55-61 (Mo.App.1981). Groppel is a carefully reasoned opinion of the Missouri Court of Appeals that was decided after the Missouri Supreme Court's decision in Crowder. Groppel discusses the Crowder decision and holds that a secondary purchaser of goods may recover damages for injury to the goods sold on a negligence theory, even absent a violent occurrence. The Groppel opinion derived the duty of care for this type of negligence cause of action directly from the implied warranty of merchantability provision in Missouri's version of §§ 2-314 through 318 of the Uniform Commercial Code (U.C.C.). Clayton maintains that the Groppel opinion accurately reflects the present state of Missouri law on this question. Further, Clayton contends that because Crowder involved a sale of a home and the ethereal common law implied warranty of habitability, it is inapplicable to a case involving a sale of goods and the precise statutory implied warranty of merchantability. See Groppel, 616 S.W.2d at 60. Thus, Clayton argues that under Groppel, summary judgment must be denied as to its strict liability and negligence counts because they are viable theories of recovery under Missouri law.
Clayton's argument concerning the recovery of pure economic loss under a strict liability theory absent a violent occurrence is easily rejected. Even the Groppel opinion on which Clayton relies so heavily denies recovery in strict liability for economic loss of the product sold, except when the *1125 product is rendered useless by some violent occurrence caused by a defect in the product. Groppel, 616 S.W.2d at 58. Accord, Forrest v. Chrysler Corp., 632 S.W.2d 29, 31-32 (Mo.App.1982) (sale of goods); Clevenger & Wright, 625 S.W.2d at 909 (sale of goods); Gibson v. Reliable Chevrolet, Inc., 608 S.W.2d 471, 473 (Mo.App.1980) (sale of goods). Clayton's argument concerning a negligence tort cause of action, although intriguing, is also easily resolved.
This case was removed to the federal district court based on diversity of citizenship. As such, the federal court is bound to follow applicable state law, which in this case is Missouri law. Missouri law is what the Missouri Supreme Court says it is, or, in the absence of applicable Missouri Supreme Court precedent, what the Missouri Courts of Appeals say it is. It is not the function of this Court to say if the Missouri Supreme Court or the Missouri Courts of Appeals are right or wrong. Rather, the Court must simply ascertain what Missouri law is and apply it. Aguilar v. Flores, 549 F.2d 1161, 1163 (8th Cir. 1977). The Missouri Supreme Court decision in Crowder does not clearly address the precise issue raised in this case. The reasoning underpinning the Crowder opinion, however, supports, and may even mandate, holding that a secondary purchaser of goods may not recover for economic loss to the goods sold on a negligence theory, absent some violent occurrence. See Crowder, 564 S.W.2d at 881-83. Missouri Courts of Appeals decisions interpreting Crowder are split on this issue. The Groppel case decided by the Eastern District and cited by Clayton, would permit a secondary purchaser of goods to recover for economic loss without proving injury through a violent occurrence. In Clevenger & Wright, 625 S.W.2d at 909, the Western District of the Missouri Court of Appeals came to the opposite conclusion without citing Groppel. The Eighth Circuit has recently resolved this conflict by holding that Clevenger & Wright correctly states Missouri law in denying such recovery under a negligence cause of action. R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 826-829 (8th Cir.1983). The parties have not cited, nor has the Court found, any other Missouri cases besides Groppel and Clevenger & Wright that address this precise issue and which may provide additional evidence of what the law in Missouri is on this subject.[1] Therefore, this Court is bound by the Eighth Circuit's holding in R.W. Murray. Clayton may not recover for its economic loss to the fire truck under Counts II and III of its complaint absent proof that the fire truck was damaged by some violent occurrence.[2]

B. Violent Occurrence.

The Missouri Supreme Court has also not set out the precise boundaries of what constitutes a "violent occurrence." But the Missouri Court of Appeals decisions in Gibson and Clevenger & Wright, and the cases cited therein, provide guidance as to the contours of the concept. In Gibson, an automobile engine temperature gauge was allegedly inoperable when the automobile was sold to the plaintiff. Some 17 or 18 months after plaintiff purchased the car, the car's engine was destroyed by extreme overheating. Plaintiff sued the seller and manufacturer of the car alleging that the failure of the temperature gauge to warn her of the overheating was a direct cause of the engine's destruction. The Gibson court ruled that the engine was not damaged by a violent occurrence; rather, it was damaged by "mere deterioration or *1126 internal breakage due to a defect in the product...." Gibson, 608 S.W.2d at 474. The Gibson opinion stressed that a violent occurrence must be a calamitous event that is likely to threaten traditional tort injuries of bodily harm or damage to other nearby property  such as occurs in a case involving unreasonably dangerous products. Id. at 473-474 (giving as examples: a vehicular collision, a fire, an explosion, the collapse of a building, or the crash of a heavy crane). In Clevenger & Wright, a silo was unable to withstand the force of a tornado and collapsed. Plaintiff sued the builder for the value of the silo under both a negligence and a strict liability tort theory. The Missouri Court of Appeals held that damage to the silo was not caused by a "violent occurrence." The court explained that while the tornado was violent, the concept of "violent occurrence" must be limited to the kind of damage caused in situations similar to cases of unreasonably or "imminently dangerous" products, and should not be extended to damages inflicted upon a product by outside forces. Clevenger, 625 S.W.2d at 909.
Clayton maintains that the cracks in the fire truck frame were caused by a violent occurrence. Clayton bases its argument on the passage in Clevenger which equates "violent occurrence" with the "unreasonably dangerous" standard of § 402A of the Restatement of Torts, Second. Clayton contends that because the frame Grumman delivered was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it," the frame was unreasonably dangerous when sold. Thus, Clayton argues that the cracks in the frame were caused by a violent occurrence within the meaning of the Clevenger passage cited earlier. Alternatively, Clayton asserts that the issue is at least a material question of fact that cannot be resolved in a summary judgment.
Clayton misreads the dicta in Clevenger & Wright and Gibson which draws an analogy between "violent occurrence," and the type of accidents that occur with "unreasonably dangerous" products. Deciding whether there was a violent occurrence does not depend on the nature of the product. It depends on the nature of the incident that has caused the damage. Clevenger & Wright and Gibson's allusion to "unreasonably dangerous" products was meant to refer to the type of precipitously forceful accidents that often occur when unreasonably dangerous products cause injuries; such as exploding bottles, runaway barges, flying saw blades, and incendiary packages. It is these types of accidents that are likely to cause bodily injuries or damage to other products that are traditionally recoverable in tort. See Crowder, 564 S.W.2d at 81; Gibson, 608 F.2d at 573-74. Here, Clayton's complaint itself shows that the frame simply cracked one day, allegedly because there were faults in the frame's structure. As Clayton stated in its complaint, it discovered that the frame had cracked only after it "observed a serious lean in the profile of the truck and subsequently discovered numerous cracks in the frame of said fire truck...." Grumman does not dispute this material fact. Clayton's allegations, taken as true for purposes of this summary judgment motion, prove only that the damage to the frame was brought about through "mere deterioration or internal breakage due to a defect in the product." Gibson, 608 S.W.2d at 474. In this regard, this case is indistinguishable from Gibson. The fire truck was not damaged because the frame buckled and the truck careened into a building or another vehicle; the frame simply cracked. The former example is what the Missouri courts refer to as a violent occurrence; the latter example is not.[3]
*1127 The relevant material historical facts are not in dispute. Clayton merely disputes the legal label to be attached to those facts. Clayton has failed to allege any set of historical facts that would place this case within the category of events that the Missouri courts would label as violent occurrences. Accordingly, summary judgment against Clayton on its tort causes of action is proper. Because summary judgment is granted in favor of Grumman on Clayton's tort claims, Grumman's claim for contribution from Warner as a joint tort-feasor is moot. Summary judgment will be granted in favor of Warner and against Grumman on Count II of Grumman's third-party complaint.

II. CONTRACT CLAIMS.

A. Statute of Limitations.

Warner, in its motion for summary judgment against Grumman, argues that Counts I and III of Grumman's third-party complaint are barred by the four-year statute of limitations for breaches of express and implied warranties. See MO.REV. STAT. § 400.2-725 (1978); R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 825 (8th Cir.1983). Warner's position is that under § 2-725 Grumman's cause of action accrued when the frame was delivered to Grumman sometime prior to April of 1978. Hence, Warner maintains that Grumman's breach of warranty claims are time barred because they were brought nearly five years after the frame was delivered to Grumman.
Although Grumman raises the issue of the future performance exception to § 2-725, the Court need not address that question. Counts I and III of Grumman's third-party complaint state causes of action for indemnity based on breaches of express and implied warranties. The statute of limitations for indemnity does not start to run until the indemnitee is found liable to a third party. See Simon v. Kansas City Rug Co., 460 S.W.2d 596, 600 (Mo.1970). Therefore, Grumman's claims for indemnity from Warner are not time barred. This result does not imprudently enlarge the statute of limitations for breach of warranty. A party who buys and then resells a product is not in a position to discover the latent defect within the warranty's limitation period because the product is in the hands of the consumer during that time. Only when the consumer sues the retailer does the retailer gain notice of the latent defect. See Walker Manufacturing Co. v. Dickerson, Inc., 619 F.2d 305, 310 (4th Cir.1980) (North Carolina U.C.C. law).
Warner has also argued that Counts I and III of Grumman's third-party complaint must fail because Grumman has no right to indemnification from Warner. According to Warner, Missouri law requires the existence of clear and unequivocal contract language demonstrating an intention on the part of the third-party defendant to indemnify the third-party plaintiff before an implied right to indemnity will be found. Warner cites Parks v. Union Carbide Corp., 602 S.W.2d 188 (Mo. en banc 1980), to support this proposition. Warner's reliance on Parks is thoroughly misplaced. Parks dealt solely with the requirement for indemnification where a party seeks indemnity for his own negligence. The Parks opinion itself distinguished between situations where the third-party plaintiff seeks indemnity for its own negligence, as contrasted to situations where the third-party plaintiff seeks indemnity for the indemnitor's negligence. 602 S.W.2d at 189. A former longstanding rule of Missouri law held that an action for "indemnity [would] not lie as a matter of law as an actively negligent tort-feasor is not entitled to indemnity." Lewis v. Amchem Products, Inc., 510 S.W.2d 46, 49 (Mo.App.1974). Therefore, Missouri courts have required a *1128 clear and unequivocal demonstration of an agreement to indemnify when the indemnitee is seeking indemnification solely for its own negligence. Missouri law is quite different if the putative indemnitee has not been negligent. Generally speaking, a person who has been held liable for failure to discharge a duty which is owed by him "but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Lewis, 510 S.W.2d at 49. See Missouri ex rel. Manchester Insurance and Indemnity Company v. Moss, 522 S.W.2d 772, 774 (Mo. en banc 1975). In the context of a product liability action, for example, a retailer may have a right to indemnification from the manufacturer of a component part based on a breach of either an express or implied warranty. To establish this right, the retailer must show that (1) he bought the part from the manufacturer to be held liable, (2) the same express or implied warranties he made to the consumer were made to him by the manufacturer, (3) the defect on which the retailer's breach of warranty liability was established constitutes a breach by the manufacturer of the same warranty as made to the retailer, and (4) he gave notice of the consumer's lawsuit against him to the manufacturer. London Guaranty & Accident Company v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766, 770 (1929). See Missouri ex rel. Manchester Insurance & Indemnity Co., 522 S.W.2d at 774; MO.REV.STAT. 400.2-607(5) (1978) (vouching-in provision of the U.C.C. for breach of warranty). Accord Central Soya Co. v. Economy Boat Store, 411 F.Supp. 214, 214 (E.D.Mo.1976) (federal law). In such a situation, there is no requirement that the retailer put on evidence of a clear and unequivocal promise to indemnify because the right to indemnity arises by operation of law. Warner's motion for summary judgment on this point will be denied.

B. Disclaimer of Warranties.

Warner's final argument is that it properly disclaimed any express or implied warranties putatively made to Grumman. Warner points to a printed warranty form, included as Exhibit A to its motion for summary judgment, as proof of its disclaimer. Grumman, however, disputes that Exhibit A, or any facsimile of Exhibit A, was a part of its contract with Warner for the purchase of the fire truck frame. Whether the contract contained such a disclaimer is a disputed question of material fact. Therefore, summary judgment cannot be granted on the basis of an alleged disclaimer of warranties. Accordingly,
IT IS HEREBY ORDERED that summary judgment is GRANTED in favor of defendant Grumman and against plaintiff Clayton on Counts II and III of Clayton's complaint.
IT IS FURTHER ORDERED that
(1) summary judgment is GRANTED in favor of third-party defendant Warner and against third-party plaintiff Grumman on Count II of Grumman's third-party complaint;
(2) Warner's motion for summary judgment on Counts I and III of Grumman's third-party complaint is DENIED.
NOTES
[1] Although the Eighth Circuit's R.W. Murray opinion cited Forrest v. Chrysler Corp., 632 S.W.2d 29 (Mo.App.1982), and Gibson v. Reliable Chevrolet, Inc., 608 S.W.2d 471 (Mo.App. 1980), as additional support for its holding, those cases only dealt with economic loss under a strict liability tort cause of action and did not address economic loss under a negligence tort cause of action.
[2] Clayton, as the first purchaser of the fire truck from Grumman, is also precluded from recovering for economic loss to the fire truck under the precise holding of the Missouri Supreme Court's decision in Crowder, 564 S.W.2d at 881-82.
[3] The Missouri Court of Appeals in Gibson v. Reliable Chevrolet, Inc., 608 S.W.2d 471 (Mo. App.1980), cited a New York case for the proposition that the collapse of equipment was a violent occurrence. See John R. Dudley Construction, Inc. v. Drott Manufacturing Co., 69 A.D.2d 368, 412 N.Y.S.2d 512 (1979). An argument can be made that the cracks in the fire truck's frame were equivalent to the "collapse of equipment" in the Dudley case. The Dudley case, however, dealt with a large crane with a 62 foot boom that was attached to a superstructure containing an engine and a cab. Due to defective bolts in the boom, the boom crashed to the ground, destroying both the boom and the superstructure. The collapse of the crane which caused the crash was sudden and violent. Thus the facts of the Dudley case are quite different from the facts alleged in Clayton's complaint. According to Clayton's complaint, the frame of the fire truck cracked without any suddenness or violence.