SHARP BROTHERS CONTRACTING COMPANY, et al., Plaintiffs/Respondents/Cross-Appellants,

v.

AMERICAN HOIST & DERRICK COMPANY, Defendant/Appellant/Respondent.

No. 67090.

Supreme Court of Missouri, En Banc.

Jan. 15, 1986.

Rehearing Denied Feb. 18, 1986.

---

1. I cannot understand why it has not paid the amount it admits it owes.

**902**

Jeffrey J. Kalinowski, Richard P. Sher, Joseph J. Simeone, St. Louis, for defendant/appellant/respondent.

Gordon N. Myerson, J. David Bowers, Kansas City, for plaintiffs/respondents/cross-appellants.

DONNELLY, Judge.

Appellant, American Hoist and Derrick Company, is the manufacturer and seller of a crane, the counterweight of which broke from its place and crushed the crane's cab. There was no personal injury or other damage. The crane was rendered useless and was sold for salvage.

Respondent Donald E. Sharp, Sr., was purchaser of the crane. Sharp Brothers was lessee of the crane.

Respondents submitted their case to a jury in Jackson County on a theory of strict liability in tort. The jury awarded respondents a total of $631,000 damages for loss of the value of the crane and for loss of the use of the crane. On appeal the Court of Appeals, Western District, affirmed the damages for loss of the crane but reversed the award for lost use, remanding the cause with orders to reduce the damage award by $263,578.54. This Court granted transfer to consider whether the cause should have been submitted on a theory of strict liability in tort.

In *Morrow v. Caloric Appliance Corp.*, 372 S.W.2d 41 (Mo. banc 1963), an implied warranty case, this Court embraced a concept of strict liability, without negligence and without privity, as to the manufacturers of products.

In *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362 (Mo.1969) this Court eliminated the shackles of warranty language altogether by recognizing strict liability in tort.

The opinions in *Morrow* and *Keener* were motivated by the belief that in certain circumstances "[t]he public interest in human safety requires the maximum possible protection for the user of the product, and those best able to afford it are the suppliers of the chattel." Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 799 (1966).

In *Keener,* this Court said:

The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by injured persons who are powerless to protect themselves. * * *

445 S.W.2d at 364 [citations omitted].

In sum, *Keener* (1) acknowledged the overwhelming misfortune of personal injury and shifted the risk of it to manufacturers to be distributed among the buying public as a cost of doing business; and (2) provided injured consumers "who are powerless to protect themselves" redress. The adoption of strict liability in tort was considered necessary in such circumstances.

At issue in the present case is whether, under *Keener,* recovery may be had by consumers for damage to the product sold. The authorities diverge on this issue. *Compare, e.g. Santor v. A. & M. Karaghensian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965), *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex.1978). Other authorities impose strict liability depending on whether the damage resulted from an "accident" or "sudden and calamitous" event. *E.g., Cloud v. Kit Mfg. Co.,* 563 P.2d 248 (Alaska 1977). The latter approach is urged by respondents.

Essentially, the issue here is one of policy as was our adoption of strict liability in the first place. The policy question was succinctly considered by Dean Keeton as follows:

It has been held that if a dangerously defective product causes an accident, then any loss resulting from that accident, including damage to the product itself, should be recoverable on a theory of strict liability in tort. Although this is a reasonable position, the risk of harm to the product itself due to the condition of the product would seem to be a type of

risk that the parties to a purchase and sale contract should be allowed to allocate pursuant to the terms of the contract. This is especially so as regards transactions involving commercial or industrial products. Therefore, contract law and the rules pertaining to contract restrictions on warranty liability should control rather than the rules and principles of tort law. * * * The policy considerations dictating strict liability in tort for dangerously defective products are not subverted so long as the seller is held strictly accountable for physical harm to persons and tangible things other than the defective product itself.

Making liability depend upon whether or not the loss results from an "accident" creates a difficult issue and arguably an irrelevant issue with respect to the validity of contract provisions allocating the risk of loss for harm to the defective product itself to the purchaser.

Prosser and Keeton on the Law of Torts, § 81(3), (5th Ed.1984). (Footnotes omitted.)

We find Dean Keeton persuasive and deny recovery on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold. Dictum to the contrary in *Crowder v. Vandendeale,* 564 S.W.2d 879, 881 (Mo. banc 1978) should no longer be followed. The judgment based on a theory of strict liability in tort cannot stand.

We note that respondents' amended petition had three counts: one on a negligence theory, one on a breach of warranty theory, and one on a theory of strict liability in tort. Before trial, on appellant's motion, the negligence and warranty counts were dismissed by the trial court and respondents have cross-appealed from such dismissals. The points raised in the cross-appeal were not addressed in this Court and can most appropriately be addressed in the Court of Appeals. We, therefore, in the exercise of the discretion conferred on us by Mo. Const. art. V, § 10, advise the Court of Appeals that appellant's Point I demonstrates "ground for reversal and retransfer the case for its consideration of the remaining points." *State v. Spivey,* 700 S.W.2d 812, 815 (Mo. banc 1985).

ROBERTSON, J., concurs.

WELLIVER, J., concurs in separate concurring opinion filed.

BLACKMAR, J., concurs and concurs in separate concurring opinion of WELLIVER, J.

HIGGINS, C.J., dissents in separate opinion filed.

BILLINGS and RENDLEN, JJ., dissent and concur in separate dissenting opinion of HIGGINS, C.J.

WELLIVER, Judge, concurring.

I concur in the principal opinion and write separately to emphasize that, instead of carving out an exception to *Keener v. Dayton Electric Mfg. Co.,* 445 S.W.2d 362 (Mo.1969), the principal opinion properly refuses to expand strict liability for product liability to situations where it is not warranted. The architects of § 402(a), Judge Traynor, William Prosser and others, recognized the need to allow injured consumers or remote parties the ability to sue suppliers, sellers or manufacturers absent the technical requirements of privity in a contract action or without the need to prove negligence in a tort action. The rationale for such a doctrine was that consumers and remote parties are not on an equal footing with the manufacturer or seller to bargain effectively for the allocation of risk. However, when commercial parties of equal bargaining power enter into a contract which either expressly allocates the risk or by omission is allocated under the terms of the Uniform Commercial Code, the policy behind strict liability does not apply. Either the contract or the U.C.C. governs the allocation of risk. *See generally Spring Motors Dist., Inc., v. Ford Motor Co.,* 489 A.2d 660 (N.J.1985).

In the case at bar, the respondents and appellant are both commercial parties who were on an equal footing during the sale of the crane. Respondents, the buyer, had the benefit of the U.C.C. when it purchased

the crane. Had it desired an extended warranty it could have bargained for such a warranty. It might be noted that it did take out insurance and, in fact, has already received the benefit of its insurance policy and subrogated its rights in this suit to its carrier. This is not the type of situation warranting the extension of strict liability in product liability. Instead, the parties should look to the U.C.C.

HIGGINS, Chief Justice, dissenting.

I dissent from the principal opinion because I believe it conflicts with and carves out an exception to application of the law of products liability in Missouri as expressed in section 402A of the Second Restatement, Law of Torts, adopted in *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362 (Mo.1969).

Donald E. Sharp, Sr., and Sharp Brothers Contracting Company sued American Hoist and Derrick Company for damages incurred when a defect in a crawler crane manufactured by defendant caused the bolts supporting the counterweight to fail. The jury returned a verdict in favor of the plaintiffs; defendant appealed and the Court of Appeals, Western District, affirmed the verdict for damages for loss of value of the crane. This Court granted transfer to consider the application of the law of strict liability in tort in an action to recover damages for damage to the product itself.

The crane was purchased from defendant by plaintiff Donald E. Sharp, Sr., who transferred it to Sears Crane Rental, which in turn leased it to Sharp Brothers Contracting Company. Sears is a wholly owned Sharp subsidiary. Sharp Brothers operated the crane for more than four years and was using the crane when the accident occurred.

In September 1980 the bolts that secured the 135,000 pound counterweight failed and the weight collapsed forward partially crushing the crane cab and causing the 200-foot crane boom to fall to the ground. Fortuitously, no workman was injured and no property other than the crane was damaged. The crane was not repaired and was later sold for salvage.

According to expert testimony, the failure of the bolts was due to a defect in the design of the machine. The existence of the defect and the causal relationship between the defect and the damage to the crane are not at issue.

Defendant contends that the trial court erred in overruling its motion for a directed verdict asserting an action in strict liability cannot be maintained when the product itself is damaged and there is no injury to a person or other property. Defendant argues that injury to the product itself is economic loss and any action for damages is governed by the Uniform Commercial Code. Plaintiffs' answer is that damage to the product is recoverable under the law of strict liability if the damage occurs as a result of violent occurrence.

Section 402A of the Second Restatement, Law of Torts, adopted by this Court in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969), specifies strict liability for damages both to the user and to the user's property: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property...." *Id.* at 364.

The law in Missouri rejects strict liability for defective products where the loss sustained is economic only. *Forrest v. Chrysler Corp.*, 632 S.W.2d 29, 31 (Mo.App.1982). If the loss is economic only, a plaintiff is restricted to the remedies provided by the Uniform Commercial Code, which essentially are those for breach of warranty. *Id.* at 31. Contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965); *Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc.*, 625 S.W.2d 906

(Mo.App.1981). The rationale for rejecting a cause of action in tort for recovery of solely economic loss was stated in *Seely*:

A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.

*Id.*, 63 Cal.2d at 15–16, 45 Cal.Rptr. 17, 403 P.2d 145.

Therefore, the issue in this case is whether the damage to the crane was direct property loss, recoverable in tort, or economic loss, recoverable only under remedies provided in the Uniform Commercial Code. In *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978), this Court interpreted the *Keener* holding and stated that strict liability would be appropriate "for personal injury, including death, or property damage either to property other than the property sold or to the property sold where it was rendered useless by some violent occurrence." [1]

If the product itself is damaged by a violent occurrence, the loss is akin to property damage as envisioned by section 402A and not to economic loss. The emphasis is on the "unreasonably dangerous" condition of the product. The "essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property." *Moorman*, 61 Ill.Dec. at 751, 435 N.E.2d at 448, citing *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981):

[A]lmost all courts have adopted the view that the benefit-of-the-bargain approach of warranty law is ill-suited to correct problems of hazardous products that cause physical injury. Manufacturers are better able to bear the risk or to take

action to correct flaws that pose a danger. Accordingly, tort law imposes a duty on manufacturers to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself.

*Pennsylvania Glass Sand Corp.*, 652 F.2d at 1172–73.

Appellant argues that the parties to a sales contract should be able to make their own bargain as to liability. This seems to be the "policy" attributed to Dean Keeton by the principal opinion. The answer is that although the parties may bargain that the product will perform as expected, purchasers should not be required to bargain that the product will be a safe one. *Pennsylvania Glass Sand Corp.*, 652 F.2d at 1175.

What constitutes a violent occurrence has been considered by the Missouri Court of Appeals. In *Gibson v. Reliable Chevrolet, Inc.*, 608 S.W.2d 471 (Mo.App.1980), a heater core in plaintiff's automobile ruptured permitting the coolant to escape. The engine was irreparably damaged and had to be replaced. *Id.* at 472. The court found this not to be a violent occurrence and citing *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248, 251 (Alaska 1977), stated: "As a general rule, a calamitous event threatening bodily harm or damage to other property is required to create a 'violent occurrence,' for mere deterioration or internal breakage due to a defect in the product is not sufficient." *Id.* at 474. In *Clevenger & Wright Co., v. A.O. Smith Harvestore Products, Inc.*, 625 S.W.2d 906 (Mo. App.1981), the plaintiff attempted to recover under products liability when a tornado destroyed its grain storage silo. *Id.* at 907. The court found no liability and stated: "While there may have been a 'violent occurrence' in the present case, *i.e.* the tornado, that term should be reserved for occurrences caused by internal defects or situations similar to § 402A 'unreasonably dan-

---

1. I do not believe that this en banc interpretation can be dismissed as dictum in order to give preeminence to a Hornbook view.

gerous' products rather than *vis major.*" *Id.* at 909.

In *City of Clayton v. Grumman Emergency Products,* 576 F.Supp. 1122 (E.D.Mo. 1983), the plaintiff brought a products liability action against the manufacturer of a fire truck when cracks appeared in the fire truck's frame. *Id.* at 1123. The District Court found no liability because the fire truck was not damaged by a violent occurrence. I agree with the interpretation of Missouri law by the District Court:

> Deciding whether there was a violent occurrence does not depend on the nature of the product. It depends on the nature of the incident that has caused the damage. *Clevenger & Wright* and *Gibson*'s allusion to "unreasonably dangerous" products was meant to refer to the type of precipitously forceful accidents that often occur when unreasonably dangerous products cause injuries; such as exploding bottles, runaway barges, flying saw blades, and incendiary packages. It is these types of accidents that are likely to cause bodily injuries or damage to other products that are traditionally recoverable in tort.

*Id.,* 576 F.Supp. at 1126.

Courts from other jurisdictions have used similar reasoning to distinguish between direct property damage and economic loss when the plaintiff was seeking compensation for loss of the product itself. In *Cloud v. Kit Manufacturing Co.,* 563 P.2d 248 (Alaska 1977), the court held that the damage to a house trailer caused by a fire which resulted from a defect in the trailer was property damage. *Id.* at 251. The court distinguished this case from its previous holding in *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alaska 1976), in which the court found that a defect in a trailer caused economic loss only. In *New Moon,* the plaintiffs suffered from a variety of problems caused by defects in the trailer including a malfunctioning furnace, doors that would not close, windows that cracked, water leaking from the bathtub into the bedroom, a leaking roof, interior walls that did not fit together, a short circuit in the electrical system, and door frames that fell off. *New Moon,* 548 P.2d at 282. The court in *Cloud* found that "the Morrows were plagued by a 'lemon,' not an unsafe product. The Morrows' trailer was not suited for the purpose for which it was purchased, but the defects in it were not such that they resulted in sudden, violent or calamitous harm." *Cloud,* 563 P.2d at 251. Therefore, I conclude that in order for direct property damage to result from an injury to the product itself, there must be sudden and calamitous damage as opposed to deterioration, internal breakage and depreciation which results in pure economic loss. *See Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir.1981); *Arrow Leasing Corp. v. Cummins Arizona Diesel,* 136 Ariz. 444, 666 P.2d 544 (Ct.App.1983); *Vulcan Materials Company, Inc. v. Driltech, Inc.,* 251 Ga. 383, 306 S.E.2d 253 (1983); *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); *Russell v. Ford Motor Co.,* 281 Or. 587, 575 P.2d 1383 (1978); *Industrial Uniform Rental Co., Inc. v. International Harvester Co.,* 317 Pa.Super. 65, 463 A.2d 1085 (1983); *Star Furniture Co. v. Pulaski Furniture Co.,* 297 S.E.2d 854 (W.Va. 1982).

In determining whether damage to a product was "sudden and calamitous" and therefore the result of a violent occurrence, the relevant considerations are the nature of the defect, the type of risk, and the manner in which the injury arose. *Pennsylvania Glass Sand Corp.,* 652 F.2d at 1173.

In this case, plaintiff's expert witnesses described the internal defects in the crane. Specifically, the crane was defective in the number and diameter of the counterweight support bolts. The crane was also defective in the manner in which the counterweight was attached to the crane. In addition, there was evidence that Kelly Crump, the oiler on the crane, had just left the back of the cab where he had been watching the gear case operate. The evidence also showed that Kelly Crump was fre-

quently in the cab and that if the incident had occurred ten minutes earlier, he likely would have been killed. There was testimony from Arnold Eidsen, the operator of the crane, that earlier in the day of the incident he had been operating the crane in an area where laborers were pouring concrete. Thus, the design defects in the crane created the risk that the boom and counterweight would fall and cause injury to a person in the cab or someone working in the area; or to some property located in the area; or, as happened in the instant case, to the crane itself.

The injury to the crane resulted from the type of sudden and calamitous event which can be referred to as a "violent occurrence." Defendant points to testimony by plaintiff's expert witness that the supports for the counterweight and the boom counterrods had failed by progressive fatigue which means the failure occurred gradually until there was no longer remaining enough support to take care of the loads, resulting in an abrupt failure. However, there was no evidence that the failure of the supports was or should have been foreseeable or that it was discoverable in the course of normal maintenance. A gradual failure does not change the reality that the damage to the crane occurred in a sudden and calamitous manner.

A New York court faced with a similar case reached the same conclusion. In *John R. Dudley Construction, Inc. v. Drott Manufacturing Co.*, 69 A.D.2d 368, 412 N.Y.S.2d 512 (1979), the plaintiff brought a strict liability action against the manufacturer when certain turntable bolts broke causing the superstructure, containing the engine and the cab from which a 62-foot boom extended, to come off its mounting and crash to the ground along with the attached boom and load. Only the crane was damaged. *Id.* 412 N.Y.S.2d at 513. The court allowed recovery, stating the following policy reasons for its decision:

> Appellants Drott and Case Company had suggested no logical reason why, under the circumstances of the accident as alleged, the law should allow recovery for

injuries to plaintiff's property beyond the limits of the crane (assuming there had been some) and disallow damages for the parts of the crane damaged or destroyed when it collapsed. In either case the damages could be said to have resulted from the same tortious conduct by appellants in supplying a crane that was dangerously susceptible to collapse because of the defective bolts. Nor are the considerations of public policy favoring recovery in the case of damage to property other than the crane any more compelling than those in the case of resultant damages to plaintiff's property in the crane itself. An action for strict products liability "seeks to provide a remedy for an individual injured because of another's violation of an obligation imposed not by contract, but by law." (*Martin v. Dierck Equip. Co.*, 43 N.Y.2d 583, 589, 403 N.Y.S.2d 185, 188, 374 N.E.2d 97, 100.) The legal duty stems from an awareness that in today's advanced technological society it is in the public interest that an increased responsibility be cast "upon the manufacturer, who stands in a superior position to recognize and cure defects, for improper conduct in the placement of finished products into the channels of commerce." (*Micallef v. Miehle Co., Div. of Miehle Goss Dexter*, 39 N.Y.2d 376, 385, 384 N.Y.S.2d 115, 121, 348 N.E.2d 571, 577).

*Id.*, 412 N.Y.S.2d at 514.

Therefore, I would hold that the damage to plaintiffs' crane was shown to have resulted from a violent occurrence caused by a defect in the crane and as a consequence, the defendant is liable under strict liability in tort.

For these above reasons, I would affirm the judgment of the trial court.